Daniel AGUIRRE; Lynn Alfsen; Alfred E. Banks, etc., et al., Plaintiffs-Appellants,

v.

S.S. SOHIO INTREPID, its engines, tackle, apparel, furnishings, etc., in rem, et al., Defendants-Appellees.

Francis C. ALLEN; Charles D. Arnet; Frank W. Barber, etc., et al., Plaintiffs-Appellants,

v.

S.S. GLACIER BAY, its engines, tackle, apparel, furnishings, etc., in rem, et al., Defendants-Appellees.

Donald E. ALLEN; Francis C. Allen; Alan Baxter, etc., et al., Plaintiffs-Appellants,

v.

S.S. SOHIO RESOLUTE, its engines, tackle, apparel, furnishings, etc., in rem, et al., Defendants-Appellees.

Robert ANDERSEN; Guy M. Duggan; Alfred Griffin, et al., Plaintiffs-Appellants,

v.

S.S. RESOLUTE, its engines, tackle, apparel, furnishings, etc., in rem, et al., Defendants-Appellees.

Guy M. DUGGAN; Richard B. English; etc., et al., Plaintiffs-Appellants,

v.

S.S. SOHIO INTREPID, its engines, tackle, apparel, furnishings, etc., in rem, et al., Defendants-Appellees.

Gerald E. ALEXANDER, Richard M. Andrews, et al., Plaintiffs-Appellants,

v.

S.S. GLACIER BAY, its engines, tackle, apparel, furnishings, etc., in rem, et al., Defendants-Appellees.

Nos. 85–2548, 85–2554.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1986.

Decided Oct. 9, 1986.

Norman Leonard, Leonard, Carder, & Zuckerman, San Francisco, Cal., Allan Brotsky, Robert J. Higgins, Angelo V. Arcadipane, Laura A. Layman, Dickstein, Shapiro, & Morin, Washington, D.C., Marvin Stender, Garry, McTernan, Stender, & Walsh, San Francisco, Cal., for plaintiffs-appellants.

Richard Beautigan, Jack G. Knebel, Sherri J. Conrad, McCutchen Doyle, Brown, &

Enersen, San Francisco, Cal., for defendants-appellees.

Before KOELSCH and ALARCON, Circuit Judges, and WILLIAMS,* District Judge.

ALARCON, Circuit Judge:

Plaintiffs/appellants Daniel Aguirre and 75 other merchant seamen (hereinafter seamen) appeal from the district court's order granting partial summary judgment in favor of defendants/appellees *S.S. Sohio Intrepid, S.S. Sohio Resolute, S.S. Glacier Bay* (hereinafter vessels), and the owner of these vessels, Trinidad Corporation (hereinafter Trinidad). The seamen sought (1) unpaid wages for work performed aboard these vessels, and (2) penalty wages, pursuant to 46 U.S.C. § 10504(c), which accrued at a rate of "2 days' wages for each day payment is delayed." The seamen obtained a maritime lien on the three vessels for the amount of the unpaid wages and wage penalties. While the parties were litigating the case in the federal district court, Congress retroactively amended 46 U.S.C. § 10504 to exempt "vessel[s] engaged in coastwise commerce" from the application of the wage penalty provision. The seamen's sole contention on appeal is that the retroactive amendment of the statute destroyed their maritime lien in violation of the takings clause of the fifth amendment to the United States Constitution. We dismiss the appeal because the seamen's claim is moot and therefore nonjusticiable.

## I. FACTS AND PROCEDURAL HISTORY

The facts are undisputed. The seamen were employed aboard the vessels pursuant to a collective bargaining agreement. Trinidad is the chartered operator of the vessels and is represented by the Tanker Service Committee, a multi-employer bargaining agent. The seamen in Case No. CV 84–5938–TEH are members of the Maritime Engineers Beneficial Association (hereinafter the Union).[1]

The collective bargaining agreement between the parties ran from June 16, 1981 to June 15, 1984. The agreement provided that effective June 16, 1982, the seamen were entitled to a 7½% wage increase. On July 15, 1982, prior to implementation of this increase, in response to the request of President Reagan, the Union and other workers in the maritime industry agreed to defer the wage increase. The terms of that deferral provide, *inter alia,* that the "Union shall have the right at any time and in its sole and absolute discretion to reinstitute the wage increase." The agreement also states that "such reinstitution shall be retroactive to such date as determined by the Union," and that "the reinstitution shall have the same force and effect under the Agreement as though the wage increase had not been deferred."

On May 18, 1984, the Union notified Trinidad that it was exercising its right to reinstate the 7½% wage increase, retroactive to July 15, 1982. The Union informed Trinidad that all wages owed pursuant to the deferred agreement were due by May 31, 1984. For reasons not relevant to this appeal, Trinidad disputed the Union's right to reinstate the wage increase provisions of the collective bargaining agreement and refused to pay the retroactive wage increase.

On August 20, 1984, the Union, acting on behalf of the seamen, filed an *in personam* action against Trinidad, and an *in rem* action against the vessels, claiming the sea-

---

* Honorable David W. Williams, Senior United States District Judge for the Central District of California, sitting by designation.

1. In Case Nos. CV 84–6894–TEH, CV 84–8058–TEH, CV 84–5966–TEH, CV 84–5980–TEH and CV 84–6371–TEH, the seamen are members of other unions, such as the International Organization of Masters, Mates and Pilots, and their dealings with Trinidad have differed in small respects from the seamen in case Case No. CV 84–5938–TEH. For purposes of resolving the issues on this appeal, these differences are not important. We refer to the facts in Case No. CV 84–5938–TEH in the discussion.

men were owed approximately $3.2 million in unpaid wages under the deferred agreement and the wage penalties under 46 U.S.C. § 10504. The plaintiffs caused the vessels to be arrested. Upon deposit of $4.3 million into the district court's registry, the ships were released. This amount represented the total of claimed wages allegedly owed to the seamen, plus accrued wage penalties.

Initially, Trinidad made a motion for partial summary judgment claiming that 46 U.S.C. §§ 544 and 596, the predecessor statutes to section 10504, controlled the wage penalty dispute because these statutes were in effect on July 15, 1982, the date the parties agreed to defer the 7½% wage increase. Section 544 expressly exempted ships engaged in coastwise commerce from liability for wage penalties under section 596.[2] On August 26, 1983, prior to the filing of these actions, Congress repealed and recodified 46 U.S.C. §§ 544 and 596, and enacted 46 U.S.C. § 10504. Under section 10504 ships engaged in

coastwise commerce were not exempt from wage penalties as they were previously in sections 544 and 596. The seamen opposed Trinidad's motion for partial summary judgment claiming that section 10504 controlled the dispute. The district court agreed with the seamen.

Following the district court's ruling, the seamen moved for summary judgment on the merits. However, before the motion was decided, Congress amended section 10504, Pub.L. No. 99–36, § 1(a)(5), 99 Stat. 67 (1985), and made the wage penalty provisions of section 10504 inapplicable to ships engaged in coastwise commerce. 46 U.S.C. § 10504(d)(1) (Partial Rev. Supp. 1986). Congress made the amendment retroactive to the enactment of section 10504, i.e., August 26, 1983, see Pub.L. No. 99–36, § 1(b), 99 Stat. at 68, because the exemption for coastwise commerce had been "inadvertently omitted" from section 10504 when it was enacted.[3] S.Rep. No. 26, 99th Cong., 1st Sess. 4, *reprinted in* 1985 U.S. Code Cong. & Ad. News 25, 28.

**2.** 46 U.S.C. § 544 (repealed 1983) provided in pertinent part: "None of the provisions of sections ... 591–596 ... of this title shall apply to sail or steam vessels engaged in coastwise trade...." 46 U.S.C. § 596 (repealed 1983) provided in pertinent part:

The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens.... Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court....

**3.** Report No. 99–26 of the Senate Committee on Commerce, Science, and Transportation stated that the purpose of the 1985 amendment to section 10504 was to "clarify the wage penalty provisions for coastwise commerce...." S.Rep. No. 26, 99th Cong., 1st Sess. 1, *reprinted in* 1985 U.S. Code Cong. & Ad. News 25, 25. The committee report explained the amendment to section 10504 as follows:

In the case of the act revising title 46, United States Code, it was the stated purpose of Congress to make no substantive changes of a

controversial nature or changes that would be a significant change in maritime policy that would adversely affect any rights, benefits or duties of those impacted. Nonetheless, during the recent codification of title 46, a wage penalty exemption statute which had existed since 1872 (46 U.S.C. § 544) was repealed and not re-enacted.... Since the rights of parties had arguably been altered by the recodification effort, the Congressional intent as expressed during consideration of the relevant legislation had not been achieved.

....

[The addition of the exemption from liability for coastwise vessels for penalty wages] clarifies the wage penalty provisons of the U.S. shipping laws that apply to vessels engaged in the coastwise commerce.... Under prior law (former 46 U.S.C. § 544), vessels engaged in coastwise commerce were exempt from this requirement. However, in the codification of the shipping laws in title 46 ... this exemption was inadvertently omitted.

....

This section would simply restore the coastwise ... commerce exemption so that the affected vessels will not have to disrupt the pay and accounting systems already in place just because of an oversight in the codification of title 46....

S.Rep. No. 26, 99th Cong., 1st Sess. 2, 4, *reprinted in* 1985 U.S. Code Cong. & Ad. News, 25, 26, 28.

Following this action by Congress, Trinidad moved for partial summary judgment on June 17, 1985, claiming that it was not liable for wage penalties under section 10504 as amended. The seamen opposed the motion contending that the retroactive amendment of section 10504 destroyed their maritime lien in violation of the due process clause and the takings clause of the fifth amendment. The district court granted Trinidad's motion. The district court held that the seamen's maritime lien was not a property interest and the retroactive amendment of section 10504 did not violate the due process clause or the takings clause of the fifth amendment. The seamen appealed the judgment granting Trinidad's motion for partial summary judgment and denying their motion for partial summary judgment.

## II. ANALYSIS

### A. Prematurely Filed Notice of Appeal

The seamen appealed from the district court's order of August 15, 1985, by filing a notice of appeal on September 12, 1985. The August 15 order was not a final judgment in that it did not dispose of all the issues, i.e., the claim for deferred wages. *Perkin-Elmer Corp. v. Computervision Corp.*, 680 F.2d 669, 670 (9th Cir.1982). On January 24, 1985, the district court directed entry of judgment as to the August 15 order pursuant to Fed.R.Civ.P. 54(b). No new notice of appeal was filed.

■ An order containing a Rule 54(b) certification is sufficient to validate a prematurely filed notice of appeal if neither party is prejudiced. *Hope v. International Brotherhood of Electrical Workers*, 785 F.2d 826, 828 & n. 4 (9th Cir.1986) (citing *Freeman v. Hittle*, 747 F.2d 1299, 1301–02 (9th Cir.1984)). Trinidad has not urged that it was prejudiced, and in our review of the record, we find none. Thus, the seamen timely appealed.

### B. Mootness

■ Although the parties did not raise the issue, a reading of the record indicates that the case has become moot. Because mootness is an element of justiciability and raises a question as to our jurisdiction, we consider the matter *sua sponte*. *Canez v. Guerrero*, 707 F.2d 443, 446 (9th Cir.1983); *Taxpayers for Vincent v. Members of City Council of Los Angeles*, 682 F.2d 847, 849 & n. 1 (9th Cir.1982), *rev'd on other grounds*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

■ "A case, or an issue in a case, is considered moot 'if it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."'" *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851, 853–54 (9th Cir.1985) (quoting *Connolly v. Pension Benefit Guaranty Corp.*, 673 F.2d 1110, 1113 (9th Cir.1982)). We cannot take jurisdiction over a claim as to which no effective relief can be granted, *United States v. Geophysical Corp.*, 732 F.2d 693, 698 (9th Cir.1984) (citing *Oregon Environmental Council v. Kunzman*, 714 F.2d 901, 903 (9th Cir.1983)), because "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Where the question sought to be adjudicated has been mooted by developments subsequent to the filing of the complaint, no justiciable controversy is presented. *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). The seamen's claim is of this character.

■ The seamen contend that Congress violated the takings clause of the fifth amendment by retroactively destroying their maritime *lien* for wage penalties on Trinidad's vessels. Appellants' Opening Brief at 4. The seamen concede, however, that Congress may "retroactively ... void the seamen's *statutory entitlement* to double wages." *Id.* at 23–24 (emphasis added). As we discuss *infra*, Congress' extinguishment of the seamen's statutory entitlement to double wages renders the seamen's maritime lien in the *in rem* action for double

wages worthless. Thus, any issue concerning the merits of their claim against the vessels for double wages is moot.

A maritime lien is the "appropriation of the ship as a security for a debt or claim...." 2 S. Friedell, S. Bellman, A. Jenner & J. Loo, Benedict on Admiralty § 22, at 2–13 (7th rev. ed. 1986) (hereinafter Benedict on Admiralty); 1 M. Norris, The Law of Seamen § 20:2, at 578 (4th ed. 1985) (a maritime lien, figuratively speaking, is "the giving of the ship as security for a debt or claim"). A seamen's lien for services rendered "is simply security for the debt...." Benedict on Admiralty, *supra*, § 27, at 2–22. A seaman is entitled to a maritime lien to protect his right to recover damages if his claim for wages is sustained. If a district court determines that a seaman has failed to demonstrate that he is entitled to recovery, the right or necessity to have a security interest in the ship vanishes.

Here, the maritime lien served as security for the recovery of damages based on the seamen's claim against the vessels for the aggregate amount of the deferred wages *and* the wage penalties. Once Congress retroactively amended section 10504, the seamen's claim for wage penalties was extinguished. Thereafter, the lien was not required as security for the claim for double wages. The seamen cannot now execute on the lien for wage penalties because Congress has extinguished their claim. Under these circumstances, a determination by this court concerning a maritime lien on an invalidated claim would not result in any enforceable relief for the seamen. Any declaration by this court on this question would be advisory.

The seamen's reliance on *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), and *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) is misplaced. The principles announced in these cases are inapplicable to the matter before us.

In *Radford*, the Supreme Court struck down provisions of the Frazier-Lemke Act which enabled a defaulting mortgagor who had been adjudicated bankrupt to retain possession of the property for five years upon the payment of reasonable rent. 295 U.S. at 575–76, 55 S.Ct. at 856-57. During this time the mortgagor could redeem the property by paying the mortgagee only the appraised value of the land, instead of its fair market value. *Id.* at 576, 55 S.Ct. at 857. The Act applied only to mortgages existing prior to the passage of the Act. *Id.* The Court held that the Act operated to take from the mortgagee rights in specific property held as security in violation of the fifth amendment. *Id.* at 594, 601, 55 S.Ct. at 865, 868–69. Among the property rights that were taken from the bank by the Act were "the right to retain the lien until the indebtedness thereby secured [was] paid." *Id.* at 594, 55 S.Ct. at 865.

In *Security Industrial Bank*, creditor banks had loaned debtors money and had obtained and perfected liens on the debtor's household furnishings and appliances before the Bankruptcy Reform Act of 1978 was enacted. 459 U.S. at 71, 103 S.Ct. at 409. Subsequently, the debtors filed for bankruptcy under the Act. *Id.* The Act exempted household items from the property included in the debtor's estate. *Id.* The debtors claimed these exemptions in their bankruptcy proceedings to avoid the liens. *Id.* at 72, 103 S.Ct. at 409. The creditor banks contended that the Act violated the takings clause of the fifth amendment. *Id.* at 73, 103 S.Ct. at 409–10. The Court did not reach the constitutional question because it construed the Act to apply only to liens established after the enactment of the Act. *Id.* at 74, 81–82, 103 S.Ct. at 410, 414–15. However, the Court stated that a retroactive application of the Act "would result in a complete destruction of the property right of the secured party." *Id.* at 75, 103 S.Ct. at 411.

In *Armstrong*, materialmen delivered materials to a prime contractor for use in constructing Navy personnel boats. 364 U.S. at 41, 80 S.Ct. at 1565. The prime

contractor defaulted on its obligations to the United States and the government took title to and possession of the uncompleted hulls and unused materials making it impossible for the materialmen to enforce their liens. *Id.* The Court held that this constituted a taking under the fifth amendment. *Id.* at 48, 80 S.Ct. at 1568–69.

The government's action in *Radford, Security Industrial Bank,* and *Armstrong* destroyed the creditor's security interest in specific property to satisfy the underlying debt, but did not affect the debt itself. In the matter before us, Congress has not impaired the seamen's ability to enforce their maritime *lien* over any viable claim. Instead, Congress eliminated their *claim* for wage penalties. The seamen do not challenge Congress' constitutional power to do so.[4]

This appeal is moot and nonjusticiable as to the claim for double wages. Accordingly, we DISMISS the appeal.

---

**4.** The seamen also appealed the district court's denial of their cross-motion for partial summary judgment. The seamen had moved for partial summary judgment claiming that Trinidad's failure to pay the deferred wages was "without sufficient cause" under section 10504(c) and therefore, they were entitled to double wages. In light of our holding that the seamen's claim for penalty wages is moot and nonjusticiable, we need not reach this issue.