LaDonna HARRISON,
Plaintiff–Appellant,

v.

EDISON BROTHERS APPAREL
STORES, INCORPORATED,
Defendant–Appellee,

and

Melvin Wall, Jr., Defendant.

No. 89–2227.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1990.

Decided Jan. 25, 1991.

Rehearing and Rehearing In Banc
Denied Feb. 21, 1991.

Harold Lillard Kennedy, III, argued, Kennedy, Kennedy, Kennedy and Kennedy, Winston–Salem, N. C., for plaintiff-appellant.

Robert Stancil Phifer, argued (James M. Powell, Gregory P. McGuire, on brief), Haynsworth, Baldwin, Johnson & Greaves, P.A., Charlotte, N. C., for defendant-appellee.

Before RUSSELL and HALL, Circuit Judges, and WILSON, District Judge for the Western District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

In her action for wrongful discharge and related claims, LaDonna Harrison appeals an order of the district court granting in part defendant Edison Brothers' motion for summary judgment. Because we believe that the facts alleged by Harrison state a cause of action for wrongful discharge under North Carolina law, we reverse the summary judgment as to that claim, and remand for further proceedings.

## I.

Appellant Harrison was hired by Edison Brothers on November 10, 1986, to work at Edison's "Jeans West" store in Winston-Salem, North Carolina. The store was managed by Melvin Wall, Jr.

Harrison alleges that, beginning November 22, 1986, Wall repeatedly made sexually suggestive remarks to her, touched her without her consent, and requested sex. She first reported this conduct to Edison's regional manager on or about December 11, but Wall's misconduct continued.

On December 18, 1986, Harrison entered the Jeans West store to find her name crossed off of the work schedule for the remainder of that week and all of the next. Harrison asserts that she tried to call the regional manager collect, but he stated that he would not accept the charges because he knew no one named LaDonna Harrison. Harrison then placed her keys in the cash register and left the store.[1]

On November 20, 1987, Harrison filed this suit in state court against Melvin Wall and appellee Edison Brothers. She asserted claims for battery, intentional infliction of emotional distress, negligent retention of employee, and wrongful discharge. Edi-

son Brothers removed the case to district court through diversity of citizenship.

Wall counterclaimed for intentional infliction of emotional distress. On May 30, 1989, Harrison and Wall dismissed their claims against one another with prejudice. Edison Brothers was not a party to the stipulation for dismissal, and indeed did not even see it until it had been entered by the district court. The stipulation purported to preserve Harrison's claims against Edison.

Edison moved for summary judgment. On November 7, 1989, the district court granted the motion in part. *Harrison v. Edison Brothers Apparel Stores,* 724 F.Supp. 1185 (M.D.N.C.1989). The court held that Harrison had not stated a claim for wrongful discharge under North Carolina law. Further, the court ruled that the dismissal with prejudice of Wall acted as an adjudication that he was not liable for emotional distress or battery; therefore, Edison, whose potential liability on those two claims was solely derivative of Wall's, could not be liable either. The court denied Edison's motion, however, on the negligent retention claim, and that claim is still pending below.

Harrison noticed this appeal on December 6, 1989. Almost two months later, on January 30, 1990, the district court entered an order certifying, under Fed.R.Civ.P. 54(b), that there was no just cause for delaying the appeal.

## II.

A threshold issue, not mentioned in the briefs of the parties, is whether this court has jurisdiction over an appeal of a judgment on less than all claims where the district court has not certified appealability before the notice of appeal.[2]

Until recently there was a sharp split among the circuits on this issue. For some years, the Sixth, Tenth, and Eleventh Cir-

---

1. Edison disputes the foregoing facts, but agrees that they, as well as the inference that Harrison was fired when her name was crossed off the work schedule, must be presumed as true for purposes of Edison's motion for summary judgment.

2. We are, of course, duty-bound to examine our jurisdiction, notwithstanding that the parties concede or stipulate it. *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

cuits ruled that a precertification notice of appeal was insufficient to confer jurisdiction. *Oak Construction Co. v. Huron Cement Co.*, 475 F.2d 1220 (6th Cir.1973); *McLaughlin v. City of LaGrange*, 662 F.2d 1385 (11th Cir.1981) (but second post-certification notice of appeal satisfied jurisdictional requirements), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *A.O. Smith Corp. v. Sims Consolidated, Ltd.*, 647 F.2d 118 (10th Cir.1981).

A more lenient view has been taken by the D.C., Third, Fifth, Seventh, Eighth, and Ninth Circuits. These courts hold that, absent prejudice to the appellee, the district court's Rule 54(b) certification may follow the notice of appeal. *Tidler v. Eli Lilly & Co.*, 824 F.2d 84 (D.C.Cir.1987); *Dawson v. Chrysler Corp.*, 630 F.2d 950, 955 n. 4 (3d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Crowley Maritime Corp. v. Panama Canal Comm'n*, 849 F.2d 951 (5th Cir.1988); *Lac Courte Oreilles Band v. Wisconsin*, 760 F.2d 177 (7th Cir.1985); *Martinez v. Arrow Truck Sales*, 865 F.2d 160 (8th Cir.1988); *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185 (9th Cir.1986). Recently, the en banc Tenth Circuit overruled *A.O. Smith* and its progeny to join the majority. *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641 (10th Cir.1988) (en banc), and the Sixth Circuit eroded its *Oak Construction Co.* rule to make an exception for a certification entered *nunc pro tunc* five days after the notice of appeal was filed. *COMPACT v. Metropolitan Gov't of Nashville and Davidson Co.*, 786 F.2d 227, 228 n. 1 (6th Cir.1986). Finally, the Supreme Court has permitted late certification in an analogous context—interlocutory appeals under 28 U.S.C. § 1292(b). *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

From its failure to raise the issue, we conclude that Edison was not prejudiced by the tardy certification. We adopt the majority view and find that we have jurisdiction over this appeal.

## III.

This court must determine whether North Carolina would recognize a cause of action for wrongful discharge where an employee is fired for refusing to accede to the sexual demands of the employer.

The North Carolina Supreme Court has only recently recognized an exception to its general terminable-at-will rule to prohibit discharges made in contravention of North Carolina public policy. *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989). In *Coman*, a truck driver alleged that he was discharged because he refused to falsify time and mileage logs required by United States Department of Transportation regulations and corresponding state statutes. The courts below had dismissed the driver's wrongful discharge suit, but the North Carolina Supreme Court reversed:

> The state public policy implications in the case at bar are compelling. Our legislature has enacted numerous statutes regulating almost every aspect of transportation and travel on the highways in an effort to promote safety. The actions of defendant, as alleged, impair and violate this public policy. Plaintiff allegedly was faced with the dilemma of violating that public policy and risking imprisonment, N.C.G.S. § 20–397, or complying with the public policy and being fired from his employment. Where the public policy providing for the safety of the traveling public is involved, we find it is in the best interest of the state on behalf of its citizens to encourage employees to refrain from violating that public policy at the demand of their employers. Providing employees with a remedy should they be discharged for refusing to violate this public policy supplies that encouragement.

381 S.E.2d at 447–48.

Though *Coman* was the state Supreme Court's first endorsement of a public policy exception, the Court of Appeals had previously adopted a similar rule. In *Sides v. Duke University*, 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), the court held that a nurse who asserted that she was discharged for refusing to commit perjury in a

lawsuit against her employer stated a claim for wrongful discharge. In another case, an employee contended that she was discharged for appearing and testifying truthfully in response to a subpoena; the court of appeals found that the employee stated a cause of action. *Williams v. Hillhaven Corp.*, 91 N.C.App. 35, 370 S.E.2d 423 (1988).

In short, the only three successful wrongful discharge plaintiffs we find in reported North Carolina cases have had to choose between their jobs and violating the criminal law. On the other hand, one of the many unsuccessful plaintiffs alleged facts somewhat similar to appellant's assertions in this case. In *Hogan v. Forsyth Country Club*, 79 N.C.App. 483, 340 S.E.2d 116, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140 (1986), the plaintiff alleged that she was discharged because she declined the sexual advances of another, more favored, employee. The court of appeals did not extend the *Sides* public policy exception to the plaintiff. *Hogan* is an imperfect precedent, however, because it involved employee-on-employee, rather than management-on-employee, harassment, and because it antedates *Coman.*

*Coman* arguably goes much further than its facts:

This court has never held that an employee at will could be discharged in bad faith. To the contrary, in *Haskins v. Royster*, 70 N.C. 601 (1874), this Court recognized the principle that a master could not discharge his servant in bad faith. Thereafter, this court stated the issue to be whether an agreement to give the plaintiff a regular permanent job was anything more than an indefinite general hiring terminable in *good faith* at the will of either party.

Numerous courts have recognized wrongful discharge theories characterized either as the bad faith exception to the at will doctrine or under the implied covenant of good faith and fair dealing. Bad faith conduct should not be tolerated in employment relations, just as it is not

accepted in other commercial relationships.

Our decision today is in accord with the holdings of most jurisdictions.

381 S.E.2d at 448 (citations omitted).

In an effort to satisfy this "bad faith" standard, Harrison argued below that her discharge violated the federal public policy reflected in Title VII.[3] The district court turned this "source" of public policy into Harrison's only remedy:

[T]he court finds that North Carolina courts, if faced with this question, would rule that application of the "bad faith" public policy exception to the at-will rule enunciated by *Coman* requires two factors: (1) that the discharge violate some well established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.

724 F.Supp. at 1193.

Though we have no objection to the first element of this test, we find no North Carolina authority for the second. *Coman* itself involved an employee who arguably had a remedy in federal court, and the North Carolina court deemed that fact irrelevant to the existence of a state remedy:

Although plaintiff may have some additional remedy in the federal courts, the courts of North Carolina cannot fail to provide a forum to determine a valid cause of action. N.C. Const. art. I, sec. 18 (1984) (open courts clause).

*Coman*, 381 S.E.2d at 447. In addition, the court left open whether its wrongful discharge cause of action might remedy violations of federal public policy:

Although we do not bottom our opinion upon federal public policy, many courts have held that violations of federal public policy may form the basis for a wrongful discharge action in state courts.

*Id.* at 449. Accordingly, we cannot accept the district court's assessment of the *Coman* wrongful discharge cause of action.

Will the North Carolina courts look to federal public policy where state law is silent? What are the contours of its "bad faith" exception? Until the state courts

**3.** There is no North Carolina statute analogous to Title VII.

534

have an opportunity to apply *Coman* to a variety of cases, accurate prediction by the federal courts will be difficult. Fortunately, we need not grapple with these issues in this case.

Whatever the breadth of the *Coman* exception, it most definitely includes firings resulting from an employee's refusal to follow his employer's instructions to violate the law. *McLaughlin v. Barclays American Corp.*, 95 N.C.App. 301, 382 S.E.2d 836, 839–40, *cert. denied,* 325 N.C. 546, 385 S.E.2d 498 (1989). The genesis of North Carolina's exception is in the courts' repugnance to granting civil immunity for actions that "defile" and "corrupt" the system of laws the courts enforce. *Id.*

North Carolina, sharing the nearly unanimous view of American jurisdictions, prohibits prostitution—"includ[ing] the offering or receiving of the body for sexual intercourse for hire." N.C.Gen.Stat. § 14–203. At oral argument, counsel for Edison argued that it is very unlikely that Harrison would have been prosecuted for prostitution had she acceded to Wall's advances. Nonetheless, we think it apparent that the exchange of sexual intercourse for the valuable economic benefit of a job fits within North Carolina's criminal prohibition. It is no defense to this suit that Harrison may not have been prosecuted or may have been able to prevail upon the government to exercise its discretion not to prosecute. She was asked to commit an act prohibited by the criminal law. She refused; she was fired. Harrison is indistinguishable from the plaintiff in *Coman,* and her complaint states a claim for wrongful discharge.

## IV.

Harrison's causes of action against Edison for emotional distress and battery can only be sustained if Wall's alleged tortious actions were authorized or ratified by Edison.[4] *Brown v. Burlington Industries, Inc.*, 93 N.C.App. 431, 378 S.E.2d 232, 235 (1989), *appeal dismissed,* 326 N.C. 356, 388 S.E.2d 769 (1990). Edison's liability on

these two claims is thus wholly derivative of Wall's.

Wall and Harrison agreed to dismiss their claims against one another with prejudice. Language in the stipulation of dismissal purported to preserve Harrison's claims against Edison. Edison, however, was not a party to the stipulation, and did not even see it until it had been entered.

■ A voluntary dismissal with prejudice under Fed.R.Civ.P. 41(a)(2) is a complete adjudication on the merits of the dismissed claim. *Citibank, N.A. v. Data Lease Financial Corp.*, 700 F.Supp. 1099 (S.D.Fla.1988), *aff'd,* 904 F.2d 1498 (11th Cir.1990); *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144 (10th Cir.1986); *Schwarz v. Folloder*, 767 F.2d 125 (5th Cir.1985). As the Fifth Circuit put it in *Schwarz,* 767 F.2d at 129:

> Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this.

■ Therefore, Wall has been adjudicated not liable for battery or intentional infliction of emotional distress. The exoneration of an employee/agent is fatal to a vicarious claim against an employer/principal under the substantive North Carolina law applicable to this case. *Altman v. Sanders*, 267 N.C. 158, 148 S.E.2d 21 (1966); *Barnes v. McGee*, 21 N.C.App. 287, 204 S.E.2d 203 (1974).

The recent *Citibank* case from the Eleventh Circuit is an apt precedent. In *Citibank,* a plaintiff voluntarily dismissed with prejudice claims against the directors of a corporation, though the stipulation repeatedly purported to preserve the plaintiff's derivative claims against the corporation. The applicable Florida law, like the North Carolina law in this case, exonerated a principal where its agent had been adjudicated not liable. The district court granted the corporation's motion for summary judg-

---

4. North Carolina also recognizes traditional employer *respondeat superior* liability for actions of employees within the scope of their employment duties. The parties agree that this form of

derivative liability is not implicated in this case, because sexual harassment of coworkers is not within the scope of the duties of a clothing store manager.

ment, and the Eleventh Circuit affirmed. Though both the district court and court of appeals acknowledged that the result was unintended by the plaintiff, they did not relieve the plaintiff of his error.

Harrison made an inadvertent but grave mistake by dismissing Wall with prejudice. A court has no appealing choice when a party seeks to unscramble the egg it has made for itself. A meritorious claim may be foreclosed for technical reasons; a defendant may be denied the victory to which the letter of the law entitles him. Justice likes neither result. In any event, even if we were so disposed, we could not reverse the summary judgment in favor of Edison without setting aside the stipulated dismissal of Wall, who is not even a party to this appeal. The summary judgment on the battery and emotional distress claims must therefore be affirmed.

In conclusion, the judgment of the district court is reversed and remanded insofar as it granted Edison summary judgment on Harrison's wrongful discharge claim. In all other respects, the judgment below is affirmed.

I am authorized to state that Judge DONALD RUSSELL dissents.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.