EQUIPMENT FINANCE GROUP, INCORPORATED, Plaintiff–Appellant,

v.

TRAVERSE COMPUTER BROKERS, Defendant–Appellee,

and

Synchronized Design and Development Company, Incorporated, Defendant.

No. 91–1691.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1992.

Decided Aug. 20, 1992.

As Amended Sept. 10, 1992.

Michael Edward Geltner, Washington, D.C., argued for plaintiff-appellant.

Craig Crandall Reilly, Murphy, McGettigan & West, P.C., Alexandria, Va., argued for defendant-appellee.

Before PHILLIPS, MURNAGHAN, and SPROUSE, Circuit Judges.

## OPINION

SPROUSE, Circuit Judge:

Equipment Finance Group, Inc., filed this diversity action against Traverse Computer Brokers and Synchronized Design and Development Company, claiming, *inter alia*, that Traverse breached its express warranty of clear title in the sale of computer equipment. Equipment Finance is a Virginia corporation specializing in financing equipment for acquisition by commercial businesses; Traverse is a Michigan corporation which acquires, brokers, and resells computer equipment; and Synchronized, also of Michigan, used computer equipment in its business. The district court granted Traverse's Rule 12(b)(6) motion to dismiss and Equipment Finance appeals. We affirm.

### I

This case involves the acquisition, sale, financing, and eventual repossession of seventeen computer workstations. The computer equipment was initially purchased by Traverse in February 1990 to be part of its regular inventory for resale. Shortly thereafter, Synchronized agreed to buy the equipment from Traverse. In March 1990, anticipating that Synchronized would obtain the necessary financing to complete the transaction, Traverse delivered the computer equipment to Synchronized. The delivery terms specified that the workstations would not be installed or used until Synchronized paid for them.

In a financing arrangement which it described as typical, Equipment Finance agreed to buy the workstations from Traverse and to lease them to Synchronized with the understanding that Synchronized would take title when the last payment was made. Consequently, on June 20, 1990, Equipment Finance bought the equipment from Traverse for $56,700 and Traverse's promise to remarket the equipment if Synchronized defaulted. Traverse expressly warranted that it was the absolute owner of the equipment and that the property was free and clear of all liens and encumbrances. The next day, June 21, 1990, Equipment Finance sold the workstations to Synchronized.[1] Three months later, on September 28, 1990, Equipment Finance filed a financing statement.[2]

In a series of unrelated transactions predating the above described sales, the First of America Bank—Southeast Michigan, Synchronized's primary lender, lent Synchronized a total of $2,647,364.34 under an agreement that gave it a security interest in Synchronized's equipment. The agreement included an after-acquired property clause providing that any equipment Synchronized acquired after the date of the loans also became collateral for the bank's loans. The bank filed a timely financing statement covering these loans. In the Autumn of 1990, Synchronized failed to meet its loan obligations, and the bank began proceedings to repossess the computer equipment. Equipment Finance contested the bank's action in Michigan state court. That case, however, was dismissed on July 19, 1991, after Equipment Finance failed to post the bond necessary to halt the bank's repossession and sale of the equipment.

---

1. The sales document was described as a "conditional sales lease." Equipment Finance, however, does not now dispute that the agreement was a sale. Likewise, Equipment Finance does not appeal the district court's conclusions regarding the effective dates of the sales.

2. Michigan law allows holders of purchase money security interests twenty days in which to file and obtain priority over conflicting security interests. Mich.Comp.Laws Ann. § 440.9312 (West Supp.1991). Due to its tardy filing, Equipment Finance did not obtain priority over Synchronized's other creditors.

The bank proceeded with the foreclosure sale.

In the meantime, in May 1991, Equipment Finance had filed this three-count diversity suit in the District Court for the Eastern District of Virginia against Traverse and Synchronized. The first count sought damages from Synchronized for the unpaid portion of the contract. Although Equipment Finance effected service of process through Virginia's long-arm statute, Va.Code Ann. § 8.01–329 (Michie Supp. 1991), Synchronized did not appear or participate in the proceedings.

In counts two and three, Equipment Finance sought damages from Traverse for breach of warranty of title and for breach of the remarketing part of the contract. On August 8, 1991, Traverse moved to dismiss. The court considered affidavits submitted by both parties and under the conversion provision of Rule 12(b)(6) granted a summary judgment to Traverse.[3] Equipment Finance filed its notice of appeal on August 12, 1991; it neither applied for nor was granted a certificate under Rule 54(b) of the Federal Rules of Civil Procedure. Later, on October 15, 1991, the court granted Equipment Finance's motion for voluntary dismissal against the remaining defendant, Synchronized.

## II

 Traverse preliminarily contends that we lack jurisdiction because the district court's order of August 8, from which appeal was taken, was not a final judgment for purposes of 28 U.S.C. § 1291. It argues that because the order dismissed the action only against Traverse and not against Synchronized, it was not final and thus not appealable absent Rule 54(b) certification. Under the circumstances of this case, we do not agree.

Initially, we reject Equipment Finance's argument that Synchronized was not a party to the suit. In this connection, Equipment Finance argues that service on Syn-

chronized was incomplete because the service of process, effected through the Secretary of the Commonwealth under Virginia's long-arm statute, was returned by the post office marked "undeliverable." In our view, however, service of process was sufficient under Virginia's long-arm statute. See Va.Code Ann. § 8.01–329(C). The plaintiff complied with the statutory provisions and the sufficiency of process was not affected by the failed delivery of notice from the Secretary to the putative defendant, Synchronized. See Steed v. Commonwealth, 11 Va.App. 175, 397 S.E.2d 281, 284 (1990).

Nonetheless, we think that the subsequent dismissal of Synchronized on the motion of Equipment Finance effectively satisfies the finality requirements of Rule 54(b). It seems to us that the procedural circumstances of this case warrant a practical approach to finality. See Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). We recently applied a similar rationale in Harrison v. Edison Brothers Apparel Stores, Inc., 924 F.2d 530, 532 (4th Cir.1991). In that case, the district court had entered its Rule 54(b) certification after the notice of appeal was filed. We held that when the adverse party is not prejudiced, the late filing of a Rule 54(b) certification does not necessarily deprive us of jurisdiction.

The circumstances we consider here, of course, differ somewhat from those of Harrison. In this case, the district court granted Traverse's motion for summary judgment, Equipment Finance filed its appeal, then two months later the district court dismissed the claims against Synchronized. The result of this chain of events is, however, the same as that in Harrison—a final disposition of all claims before consideration of the appeal. Consequently, we join those circuits recognizing cumulative finality where all joint claims or all multiple parties are dismissed prior to the consideration of the appeal. See Sacks v. Rothberg,

---

**3.** The district court dismissed count two as discussed *infra* after finding there was no breach of warranty; this left outstanding count three alleging that Traverse had breached its agree-

ment to remarket the equipment. Because the damages alleged, $7,300, were below the jurisdictional requirement of $50,000, the court likewise dismissed count three.

845 F.2d 1098, 1099 (D.C.Cir.1988); *Alcorn County v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1165–66 (5th Cir.1984); *Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 184–85 (3d Cir.1983); *Martin v. Campbell,* 692 F.2d 112, 114 (11th Cir. 1982); *Pireno v. New York State Chiropractic Ass'n,* 650 F.2d 387, 389 n. 4 (2d Cir.1981), *aff'd sub nom. Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *Anderson v. Allstate Ins. Co.,* 630 F.2d 677, 680–81 (9th Cir.1980); *Merchants & Planters Bank v. Smith,* 516 F.2d 355, 356 n. 3 (8th Cir.1975); *Jetco Elec. Indus. v. Gardiner,* 473 F.2d 1228, 1231, *reh'g denied,* 474 F.2d 1347 (5th Cir.1973).

We are particularly disposed to this view under the circumstances of this case. There is no indication that Traverse was prejudiced by the dismissal. In fact, Traverse neither objected to nor appealed the dismissal. Furthermore, we perceive no violence to the rationale underlying Rule 54(b). Synchronized neither appeared nor participated in the proceedings, and because the action against it was ultimately dismissed, it is not vulnerable to judgment. There are no overlapping claims or issues of joint liability, nor are there any outstanding motions. *Cf. United States ex rel. Hudson v. Peerless Ins. Co.,* 374 F.2d 942, 944 (4th Cir.1967). Unfortunately for Equipment Finance, however, it gains little solace from this conclusion as we consider the merits of its appeal.

### III

■ On the merits, we first consider Equipment Finance's appeal of the district court's ruling that Traverse did not violate its express warranty of clear title. Since the sale occurred in Michigan and the collateral is located there, we apply Michigan law. *See Rawl's Auto Auction Sales, Inc. v. Dick Herriman Ford, Inc.,* 690 F.2d 422, 426 (4th Cir.1982); Va.Code Ann. §§ 8.1–105(1), 8.9–103(1)(b) (Michie 1991).

■ Equipment Finance argues that Traverse did not have clear title when it sold the workstations to Equipment Finance on June 20 because the bank's security interest in the equipment had attached in March, when Traverse delivered the equipment to Synchronized. We agree with the district court, however, that Traverse had clear title when it sold the workstations to Equipment Finance because the bank's security interest did not attach until Synchronized agreed to purchase the equipment on June 21.

Article Nine of Michigan's Commercial Code provides for the creation and perfection of security interests. The creditor's security interest in the debtor's goods becomes enforceable when it attaches. Mich. Comp. Laws Ann. § 440.9203 (West Supp. 1991). Once the creditor's security interest has attached, it may be perfected through an appropriate filing giving public notice that a creditor has a security interest in the goods. *Id.* § 440.9203.

Three requirements in section 440.9203 govern the attachment of the security interest at issue here. The creditor's security interest attaches when "(a) [t]he collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; (b) [v]alue has been given; and (c) [t]he debtor has rights in the collateral." *Id.* § 440.-9203(1).

The parties do not dispute that on June 20 the bank's security interest satisfied subsections (a) and (b); the bank had a signed security agreement from Synchronized containing an after-acquired property clause and it had given value. This dispute, however, centers on the requirement of subsection (c)—whether Synchronized acquired "rights in the collateral." The critical issue in determining that question is the legal effect of Traverse's delivery of the equipment to Synchronized on March 20.

The Code does not define "rights in collateral," leaving it to the courts to do so. *Northern Va. Bank v. Vecco Constr. Indus. (In re Vecco Constr. Indus.),* 9 B.R. 866, 876 (Bankr.E.D.Va.1981). Obviously, however, debtors can only convey to creditors those rights they hold; these are de-

termined by examining the underlying transaction. *See* James J. White & Robert S. Summers, Uniform Commercial Code 988 (3d ed. 1988). As to the underlying agreement between Traverse and Synchronized, the unrefuted affidavit of Traverse's president states that Synchronized had agreed not to use or even to install the equipment. For that matter, Equipment Finance's complaint alleges only that Synchronized had the right to possess the equipment. It is clear that before the actual purchase on June 21, Synchronized had only the right of possession.[4]

Fatal to Equipment Finance's allegation that Traverse's title was faulty is that bald possession is not sufficient to give a debtor rights in the collateral. *See Douglas–Guardian Warehouse Corp. v. Esslair Endsley Co.*, 10 U.C.C.Rep.Serv. (Callaghan) 176, 183–84 (W.D.Mich.1971) (rights in collateral established by debtor's right to sell and obligation to preserve disputed property, not mere possession).[5] Synchronized had no right beyond possession in the collateral until June 21, when it bought and obtained title to the workstations from Equipment Finance. The bank's security interest then attached, but since it attached a day after Traverse's sale to Equipment Finance, obviously Traverse's warranty to Equipment Finance was unaffected. Whatever loss Equipment Finance suffered resulted from its failure to conduct a financing statement search on Synchronized and its failure to establish priority over prior secured parties by filing a financing statement within twenty days of the transaction. *See* Mich.Comp. Laws Ann. § 440.9312.

Finally, Equipment Finance's contention that an evidentiary hearing was required to determine the nature of the agreement between Traverse and Synchronized is without merit. Equipment Finance did not meet the Rule 56 requirement to "by affidavits or as otherwise provided ... set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Equipment Finance's opposition to Traverse's motion was supported by nothing more than speculation and it failed to present any explanation, pursuant to Rule 56(f), showing why it could not provide sufficient facts to avoid summary judgment. *See Atlantic States Constr. Co. v. Robert E. Lee & Co.*, 406 F.2d 827, 829 (4th Cir.1969).

The judgment of the district court is therefore affirmed.

*AFFIRMED.*

---

**4.** Even if we were to read Equipment Finance's complaint as alleging that a sales contract between Traverse and Synchronized existed, we are unpersuaded that it was anything more than a potential contract conditioned upon financing. When, as is undisputed, the original financing arrangement did not materialize, neither did a sales contract. Since there was no contract, Synchronized obtained no right in the collateral until it purchased the computer workstations from Equipment Finance on June 21.

**5.** *North Platte State Bank v. Production Credit Association*, 189 Neb. 44, 200 N.W.2d 1 (1972), and *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546, 549 (4th Cir.1972), on which Equipment Finance relies, are inapposite, addressing the definition of the term "debtor receives possession" in disputes involving the priority of perfected secured interests rather than "rights in the collateral." Even if they were on point, these cases teach that the debtor must have title or a sales contract, as well as possession.