## THE CUBADIST.*

(Circuit Court of Appeals, Fifth Circuit. February 22, 1919.)

No. 3330.

1. SEAMEN ⊗⇒24—WAGES—TIME FOR PAYMENT.

In Rev. St. § 4529, as amended by Act March 4, 1915, § 3 (Comp. St. § 8320), providing that a seaman shall be entitled to his wages "in case of vessels making foreign voyages * * * within 24 hours after the cargo has been discharged," construing said section with section 4530, the words "within 24 hours after the cargo has been discharged" refer to discharge on completion of the voyage for which the seaman shipped.

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 249 U. S. —, 39 Sup. Ct. 392, 63 L. Ed. —.

2. SEAMEN ⊂⇒24—WAGES—TIME FOR PAYMENT—TERMINATION OF "VOYAGE."

Under shipping articles for a voyage from Boston to a Cuban port, and such other West Indian or Gulf of Mexico ports as the master might direct, and back to a final port of discharge, north of Hatteras, for a term not exceeding six calendar months, the voyage includes such trips, within the articles, as may be made within the six months, and the seamen are not entitled to payment of full wages within that time, unless the vessel makes a United States port north of Hatteras.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voyage.]

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Suit in admiralty by Henry W. Gordon and others against the steamship Cubadist; Harry L. Michelson, claimant. Decree for respondent, and libelants appeal. Affirmed.

For opinion below, see 252 Fed. 658.

Alex T. Howard, of Mobile, Ala., for appellants.

Palmer Pillans, of Mobile, Ala., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. [1] This is an appeal from a decree in admiralty from the Southern District of Alabama, 252 Fed. 658. The libelants were seamen who shipped on the steamship Cubadist, and the dispute arose as to their right to demand full wages after the lapse of 24 hours after the ship had discharged its cargo at the port of Mobile, Ala. The case calls for the construction of section 4529, Revised Statutes of the United States, as amended by the Act of March 4, 1915 (38 Stat. 1164, U. S. Compiled Statutes, § 8320), and which is section 3 of the act commonly known as the "La Follette Seamen's Act." The facts were agreed upon. The libel was dismissed as to appellants, upon the ground that they were not entitled to demand full wages, and from that decree the appeal is taken.

The appellants shipped on the Cubadist, under shipping articles describing a voyage from Boston to Port Padre, Cuba, and to such ports and places in any part of the West Indies and/or the Gulf of Mexico, as the master might direct, and back to a final port of discharge in the United States, north of Hatteras, for a term of time not exceeding six calendar months. The Cubadist steamed from Boston to Port Padre; thence to New Orleans with a cargo of molasses, which was there discharged; thence to Matanzas, Cuba, where it took on another cargo of molasses, which it carried to Mobile, and there discharged. It was 24 hours after the discharge of this last cargo that the demand for full wages by the appellants was made by them and refused by the master. The pertinent sections of the Seamen's Act (Revised Statutes, amended, §§ 4529 and 4530) are here set out in full:

Section 4529: "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is

discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. ❊ ❊ ❊

Section 4530: "Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned. And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall then be due him, as provided in section forty-five hundred and twenty-nine of the Revised Statutes. ❊ ❊ ❊ "

Comp. St. §§ 8320, 8322.

Section 4529, so far as it affects this case, provides that the master or owner of any vessel shall pay to every seaman his full wages "in case of vessels making foreign voyages, within 24 hours after the cargo has been discharged." The Cubadist had made a foreign voyage and had discharged her cargo at Mobile, and the situation created by the Seamen's Act, if literally construed, had arisen. The appellants contend for a literal construction. The appellees contend that, construing the act in its entirety, it is evident that the words of section 4529, "within 24 hours after the cargo has been discharged," refer to a discharge of cargo upon the completion of the voyage for which the seamen shipped. This was the holding of the District Judge, and we concur in it.

Section 4529 and section 4530 should be construed together. The former provides for the payment of full wages to seamen; the latter, for half then earned wages at any port, touched by the ship, where cargo is received or discharged. The former applies to full payment on completion of the voyage, or the termination of the shipping articles, or the discharge of the seaman; the latter to partial payments to be made during the progress of the voyage. Section 4530 provides for the payment of half then earned wages "at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo *before the voyage is ended.*" During the progress of the voyage, full wages can only be demanded if half then earned wages are wrongfully denied. The section then reads as follows:

"And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall then be due him, *as provided in section 4529* of the Revised Statutes."

It is clear from this reference to section 4529 that Congress intended that section to cover only the payment of full wages due, on the completion of the voyage or discharge of the seaman, and section 4930 to cover all payments to be made during the progress of the voyage. The use of the words, in case of foreign voyages, "after the cargo has been discharged," instead of "when the voyage is ended," may be at-

tributed to their former use in the Revised Statutes, when a necessity for retaining seamen, not only until completion of the voyage, but until after discharge of cargo, existed. However this may be, reading sections 4529 and 4530 together, they form a complete system only if we attribute to section 4529 the function of regulation of final payments in full upon completion of the voyage or discharge of the seaman, and to section 4530 the regulation of payments arising out of situations that occur during the progress of and before the time for final settlement between the seaman and the shipowner, either because of the ending of the voyage for which he shipped or the discharge of the seaman, if that first occurred.

To bring the two sections into harmonious relation with each other, it is necessary to give to the words "after the cargo has been discharged" the meaning of a discharge upon the completion of the voyage for which the seaman shipped. There might be many complete discharges of cargo during the progress of a single voyage. In such cases, section 4530 and section 4529 would both apply, if section 4529 be given the construction contended for by appellants, and it would then come into direct conflict with section 4530. Section 4530 would entitle the seaman to only half of his wages then earned, while section 4529, if applicable to such a situation, would entitle him to full wages, even though he had not then been discharged. It will not be presumed that Congress intended to confer on seamen the right to demand, at their option, half-earned wages, or full wages, in identical situations. If section 4529 is limited to payments to be made upon completion of the voyage shipped for, and discharge of cargo thereupon, or to the discharge of the seaman, if that first occurs, there will be no such conflict between the two sections, and each will have its proper scope.

[2] The question remains as to what constituted the voyage, under the shipping articles in this case. They provided for a trip from Boston to Port Padre, Cuba, and to such other West Indian or Gulf of Mexico ports as the master might direct, and as the ship could make, within the allotted six months, and also for a return trip to any port in the United States north of Cape Hatteras. Section 4511, Revised Statutes (Comp. St. § 8300), recognizes the validity in shipping articles, of voyages of this kind, and provides a form in the schedule attached to it to describe them. We think it clear that a voyage, within the meaning of shipping articles so worded, is the journey or journeys permissible to the ship by the language of the articles, and for which the seaman engages. Under the language of the articles in the record, the ship was permitted to go to Port Padre, and also to such other ports or places, one or many, in any part of the West Indies or Gulf of Mexico, as the master might direct, provided the time limit of six months was not exceeded, and provided the ship had not theretofore made a port in the United States north of Hatteras. The Martha, Fed. Cas. No. 9144; In re George Moncan, alias Ah Wah (C. C.) 14 Fed. 44.

The facts show that the Cubadist, before landing at Mobile, had not made any ports other than ports in the West Indies and Gulf of

Mexico, had not been away from Boston the stipulated six months, and had not touched at any port in the United States north of Hatteras, since its arrival at Port Padre, Cuba, and so had not completed the voyage that appellants shipped for in Boston. They were, therefore, not entitled to full pay, upon demand 24 hours after discharge of cargo at Mobile, since the voyage they shipped for was then incomplete.

The libel was properly dismissed, and the decree of the District Court is affirmed.