VILLIGAS et al. v. UNITED STATES.

(District Court, E. D. New York. May 11, 1922.)

1. Seamen ⊂⊃33—Imposition of penalty for delayed payment of seamen's wages held unwarranted.

Where crew of government owned steamship, wrecked and sunk in Arabian Sea, were sent by American consul without their captain to New York on another vessel, and there denied full payment of wages on ground that they could produce no papers showing amounts due,

*held* delay pending ascertainment of amount due, which finally necessitated cable to captain, was not ground for imposition of penalty under Rev. St. § 4529 (Comp. St. § 8320).

2. Admiralty ⊂⊃27—Action in personam against United States, in lieu of action in rem against government-owned vessel, not maintainable where vessel has been lost.

Substituted action in personam against United States, authorized by Act of March 9, 1920, §§ 1, 2 (Comp. St. Ann. Supp. 1923, §§ 1251¼, 1251¼a), in place of action in rem against government-owned vessel, will not lie, where such vessel has been lost, and therefore could not be proceeded against in rem if she was privately owned.

3. Seamen ⊂⊃13—Shipwrecked seamen held not entitled to transportation allowance.

Where government-owned steamship was wrecked and sunk in Arabian Sea, part of crew proceeding to England were not, under Revised Statutes, entitled to transportation allowance.

In Admiralty. Libel by C. Villigas and others against the United States. Libel dismissed.

Frederick R. Graves, of New York City, for libelants.

Burlingham, Veeder, Masten & Fearey, of New York City, for respondent.

GARVIN, District Judge. The steamship Berwyn was wrecked and sunk in the Arabian Sea June 8, 1920. The crew were taken to Alexandria, and were sent on to New York by the American consul, on the Dakotan, without their captain, arriving July 9, 1920. When they arrived, they at once went to the Strachan Shipping Company, managers for the United States Shipping Board, the owner of the Berwyn, and were given $20 each, upon their demand for wages in full. A day or two later, most of them were given $20 more each, but their full wages were refused on the ground that they could produce no papers showing the respective sums due. The Strachan Shipping Company communicated with its Savannah office, with the State Department, and with the United States Shipping Board, endeavoring to ascertain what wages were due each of the crew, but could obtain no information. On July 24 the company cabled to the captain at Alexandria, and received from him the necessary advices, as a result of which the men were paid off in full July 30. The captain had not cabled the information sooner because he was without funds.

Section 4529 of the Revised Statutes (Comp. St. § 8320) provides:

"The master or owner of any vessel making coasting voyages shall pay to every

seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage."

[1] This is indeed intended for the protection of the seaman, but is not an enactment by Congress that the master or owner shall do the impossible, nor does it prescribe a penalty unless he refuses or neglects to make payment without sufficient cause. The record discloses that, when the crew reached Alexandria, their control was taken out of the hands of the master by a government official, who gave instructions regarding the transportation of the libelants to New York, which he enforced by the military authorities. The master, without funds, made every reasonable effort to obtain the money necessary to send a cable, and the company, at New York, was advised that his arrival there might be expected at any time. During the period of two weeks that elapsed until a cable was sent to Alexandria, the company was not idle, but endeavored in various ways to ascertain the sums due the men. I find that the conduct of master and company was honest and not a mere pretext, and that on the merits double pay should not be allowed (see The Cubadist, 256 F. 203, 167 C. C. A. 419), although I am quite sensible

that the men have been put to loss, inconvenience, and perhaps some suffering through no fault of their own.

[2] Aside from the merits, however, jurisdiction appears to be lacking. The United States can be held liable only by reason of an act of Congress. The libelants rely upon the Act of March 9, 1920 (Comp. St. Ann. Supp. 1923, §§ 1251¼, 1251¼a), which provides as follows, in part:

"That no vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation, and no cargo owned or possessed by the United States or by such corporation, shall hereafter, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions: Provided, that this act shall not apply to the Panama Railroad Company.

"Sec. 2. That in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel or is a tug boat operated by such corporation."

This substituted an action in personam where an action in rem would lie. Banque-Russo Asiatique-London v. United States Shipping Board Emergency Fleet Corporation et al. (D. C.) 266 F. 897. The Berwyn was lost, and therefore no proceeding in rem could have been had against her if she had been the property of private owners.

[3] There can be no allowance for transportation of a part of the crew to England. The voyage of the ship terminated when she was lost, and the Revised Statutes make no provision for furnishing transportation of destitute shipwrecked seamen to a port in a foreign country.

The libel must be dismissed.