Kirk L. DUNHAM, et al., Plaintiffs,

Stephen C. Castellano,
Plaintiff-Appellant,

v.

M/V MARINE CHEMIST, Her Engines,
Boilers, In Rem, and Marine Transport
Lines, Inc., In Personam, Defendants-
Appellees.

No. 86–2368.

United States Court of Appeals,
Fifth Circuit.

March 11, 1987.

Eliot P. Tucker, Mandell & Wright,
Houston, Tex., for plaintiff-appellant.

Terence G. Connor, Samuel E. Hooper,
Miami, Fla., Neel, Hooper & Kalmans,
Houston, Tex., for defendants-appellees.

Before REAVLEY and RANDALL,
Circuit Judges, and WOODWARD,[*]
District Judge.

PER CURIAM:

Plaintiff Stephen C. Castellano appeals
the district court's dismissal of his suit
under the penalty wage provision of Title
46 of the United States Code, 46 U.S.C.
§ 10504. Castellano asserts that, in retro-
actively amending Title 46 to exclude coast-
wise voyages from the application of the
penalty wage provision, Congress violated
the "takings" clause of the Constitution's
fifth amendment by destroying without
compensation Castellano's maritime lien in
the M/V *Marine Chemist.* We affirm the
district court's dismissal of Castellano's
claim.

I.

The events transforming this seaman's
wage claim into a suit of constitutional
implications began in 1983, when Congress
recodified substantial portions of the codal
maritime law. One of the provisions reco-
dified was the double wage penalty against
tardy payment of wages to seamen, for-
merly codified at 46 U.S.C. § 596. Pursu-
ant to this provision, if a shipmaster does
not pay a seaman the balance of the wages
due to him upon his discharge or within
two days after the termination of the ship-
ping articles agreement, the shipmaster
must pay the seaman two days' wages for
each day that payment is delayed. During
the one hundred year period preceding the
recodification, the double wage penalty was
subject to an exception for vessels engaged

---

[*] District Judge of the Northern District of Texas, sitting by designation.

in coastwise trade.[1] In recodifying the double wage penalty, however, Congress inadvertently omitted the exception for coastwise trade. S.Rep. No. 26, 99th Cong., 1st Sess. 2, 4, *reprinted in* 1985 U.S.Code Cong. & Ad.News 25, 28 [hereinafter cited as Senate Report]. The double wage penalty as recodified at 46 U.S.C. § 10504 thus for the first time applied to coastwise voyages. *See* Partial Revision of Title 46, United States Code, Shipping, Pub.L. No. 98–89, 97 Stat. 500, 570 (1983).

Some ten months after the recodification of the wage penalty provision, plaintiff Stephen Castellano began working for defendant Marine Transport Lines, Inc. ("MTL") as a deck officer aboard the M/V *Marine Chemist.* Castellano worked aboard the *Marine Chemist* for eleven days as the ship pursued a coastwise voyage. Castellano's employment aboard the *Marine Chemist* was governed by a collective bargaining agreement between MTL and the International Organization of Masters, Mates, and Pilots ("the union").

The collective bargaining agreement provided for an increase in wages and other benefits payable to the employees covered effective in June of 1983, and for another increase effective in December of that year. Shortly before the increase scheduled for June, 1983 was due, the union and MTL entered into a memorandum of understanding that deferred indefinitely the increases that would have otherwise been due. One day after Castellano began his employment aboard the *Marine Chemist* in June of 1984, the union exercised a clause in the memorandum allowing it to unilaterally and retroactively reinstate the increases provided for in the collective bargaining agreement.

Castellano and eight other seamen brought suit against MTL *in personam* and the *Marine Chemist in rem* in August of 1984. The complaint demanded payment of the increases due under the collective bargaining agreement, and also invoked the wage penalty provision on the ground that MTL had not timely complied with the union's demand for increases.

While the suit against MTL was still in its opening phases, Congress recognized and corrected its unintentional omission of the wage penalty provision's exception for coastwise voyages. *See* Senate Report at 4, 1985 U.S.Code Cong. & Ad.News at 28 ("[I]n the codification of the shipping laws in title 46, United States Code (Public Law 98–89), this exemption was inadvertently omitted.... This section would simply restore the coastwise ... commerce exemption so that the affected vessels will not have to disrupt the pay and accounting systems already in place just because of an oversight in the codification of title 46."). In May of 1985, Congress amended section 10504 to include the exception for coastwise voyages, Pub.L. No. 99–36, § 1(a)(5), 99 Stat. 67 (1985), and made the amendment retroactive to the enactment of section 10504 in 1983. *See id.,* § 1(b), 99 Stat. at 68. Section 10504, as amended, thus excluded on its face Castellano's claim for wage penalties.

In November of 1985, MTL moved for summary judgment against the plaintiffs. After an evidentiary hearing, the district court granted partial summary judgment against all of the plaintiffs with respect to their claims for the increased wages and benefits. Evidence adduced at the hearing demonstrated that MTL had paid each of the seamen the increases due under the collective bargaining agreement. With respect to their claims under the wage penalty statute, the district court, finding a genuine issue of material fact, refused to grant summary judgment as to seven of

---

1. An early version of the wage penalty provision currently codified at 46 U.S.C. §§ 10313, 10504 was enacted in an act entitled "An Act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen," ch. 322, § 35, 17 Stat. 262, 269 (1872). Two years later, Congress added a provision mandating that "none of the provisions of [the above entitled act] shall apply to sail or steam vessels engaged in the coastwise trade." Act of June 9, 1874, ch. 260, 18 Stat. 64. This provision remained unchanged in the pages of the United States codes until it was repealed in 1983, as discussed *supra.*

the plaintiffs, none of whom had worked for MTL on a coastwise voyage. The court, however, dismissed Castellano's claims because "as a matter of law persons employed on 'coastwise voyages' are not covered by the penalty wage statute."[2] *Dunham v. M/V Marine Chemist*, No. H–84–3548, slip op. at 7 (S.D.Tex. Apr. 22, 1986) (order ruling on motion for summary judgment).

## II.

Appealing the district court's dismissal of his claim, Castellano—echoing an argument rejected by the Ninth Circuit in *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185 (9th Cir.1986)—argues that the fifth amendment does not permit Congress to retroactively extinguish his maritime lien in the M/V *Marine Chemist*. Castellano first notes that, due to MTL's initial nonpayment of wages and wage penalties, he acquired a maritime lien in the *Marine Chemist* under the general maritime law. He next asserts that his maritime lien is a property interest cognizable under the fifth amendment's prohibition of governmental takings of private property without just compensation. While acknowledging that Congress may constitutionally extinguish his statutory cause of action for wage penalties, Castellano argues that the fifth amendment does not permit Congress to retroactively extinguish his maritime lien in the *Marine Chemist*.

MTL, in response, notes the inherent contradiction in Castellano's "seek[ing] an order that his maritime lien for wages against the *Marine Chemist*, to the extent

that it secured penalties which he concedes he cannot claim against the master, the owner or the operator of the vessel, nevertheless remains a property right in the vessel for the amount of the very claim he cannot sustain." Appellee's Brief at 8. MTL then presents two arguments that Congress's incidental extinguishment of Castellano's lien did not violate the "takings" clause of the fifth amendment. First, MTL asserts that, according to general principles of fifth amendment jurisprudence, there is no "taking" when, as here, (1) the governmental action is merely an adjustment of economic benefits and not a physical invasion or appropriation of the property, (2) the plaintiff has no investment-backed expectation in the property, and (3) the economic impact of the governmental action is limited. Second, MTL argues that there was no fifth amendment violation because Castellano has a cause of action for damages under the Tucker Act, 28 U.S.C. § 1491.

Following the Ninth Circuit's analysis, but not its conclusion that the case before it was moot,[3] we agree that no "taking" is presented by the facts of the instant case. *Aguirre*, 801 F.2d 1185. Even if, as Castellano argues, the maritime lien is " 'a charge upon ships of a nature unknown alike to common law and equity' " that possesses "such 'peculiar characteristics' that it is often incomprehesible [sic] to those unfamiliar with its unique nature," Appellant's Brief at 12 (quoting G. Price, *The Law of Maritime Liens* 1 (1940); G. Robinson, *Handbook of Admiralty Law* 363 (1939)), the fact remains that a "sea-

---

**2.** We note appellate jurisdiction under 28 U.S.C. § 1292(a)(3) (courts of appeals shall have jurisdiction of appeals from "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed").

**3.** The Ninth Circuit found, as Castellano concedes, that the congressional amendment of section 10504 legitimately extinguished the seamen's wage penalty claims. 801 F.2d at 1190. The court then reasoned that "[t]he seamen cannot now execute on the lien for wage penalties because Congress has extinguished their claim. Under these circumstances, a determination by

this court concerning a maritime lien on an invalidated claim would not result in any enforceable relief for the seamen. Any declaration by this court on this question would be advisory." *Id.*

We respectfully decline to follow the Ninth Circuit's decision that the amendment of section 10504 rendered moot the seamen's claims for wage penalties. The ultimate question in this case, as in any appeal of a dismissal, is whether the district court erred in dismissing the cause for failure to state a claim. The simple fact that we agree with the district court's conclusion that no claim has been stated is no reason to consider the case moot.

men's lien for services rendered 'is simply security for the debt.' " *Aguirre,* 801 F.2d at 1190 (quoting 2 *Benedict on Admiralty* § 26, at 2–22 (7th rev. ed. 1986)). As the Ninth Circuit notes:

> A seaman is entitled to a maritime lien to protect his right to recover damages if his claim for wages is sustained. If a district court determines that a seaman has failed to demonstrate that he is entitled to recovery, the right or necessity to have a security interest in the ship vanishes.

*Id.* Castellano's maritime lien served as security for the recovery of damages based on his claim against the M/V *Marine Chemist* for the aggregate amount of the increased wages and the accumulated wage penalties. After MTL paid him the increased wages due under the collective bargaining agreement, Castellano's lien in the vessel served as security only for the amount of the wage penalties. The district court properly determined, and Castellano concedes, that under section 10504 Castellano's claim for wage penalties cannot be sustained because the section no longer applies to coastwise voyages. After the court adjudicated that Castellano's claim must be dismissed, the "right or necessity to have a security interest in the ship vanishe[d]." *Aguirre,* 801 F.2d at 1190. Castellano's lien in the ship was extinguished not because Congress "took" the lien or affected his right to a lien, but because, according to the law as determined by concededly valid legislative action, the claim secured by the lien was worthless. There was no fifth amendment "taking" here.

Castellano relies on the same trio of Supreme Court opinions relied upon by the seamen in *Aguirre: United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982); *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). We agree with the Ninth Circuit that the principles announced in those opinions are inapposite to these facts. These opinions addressed the propriety of congressional action hampering the enforce-ability of security interests when the claims secured remained valid. Castellano's contentions, on the other hand, challenge the propriety of congressional action having an incidental effect upon the enforceability of security interests by invalidating the claims secured.

*Security Industrial Bank* considered a potential conflict between the fifth amendment and provisions of the Bankruptcy Reform Act of 1978 that exempted household items from the property included in the debtor's estate. 459 U.S. at 75–78, 103 S.Ct. at 410–411. Creditors, who had loaned debtors money and had obtained and perfected liens on debtors' household items before the act was enacted, argued that the act violated the "takings" clause of the fifth amendment. *Id.* at 71–73, 103 S.Ct. at 408–409. Having identified a potential constitutional problem with the retroactive application of the act, the Court interpreted the act to apply only to liens established after the enactment of the act. *Id.* at 81–82, 103 S.Ct. at 413–414. Unlike the situation in the instant case, in *Security Industrial Bank* the creditors' claims secured by the liens were at all times valid; the constitutional problem arose because the retroactive application of the act questioned the enforceability of the liens, not the claims secured.

*Armstrong* presented a more traditional kind of governmental "taking." 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). In that case, materialmen supplied materials to a prime contractor engaged in the construction of Navy personnel boats. *Id.* at 41, 80 S.Ct. at 1565. The contractor defaulted on its obligations to the government, and the government took title to and possession of the uncompleted hulls and unused materials. *Id.* Because of the doctrine of sovereign immunity, the materialmen were unable to enforce their liens in the material against the government. *Id.* at 46, 80 S.Ct. at 1567. The Court held that this constituted a fifth amendment taking. *Id.* at 48, 80 S.Ct. at 1568. Again, in *Armstrong,* unlike the instant case, the claims secured by the liens were unquestionably valid.

Finally, in *Radford,* the Court found an unconstitutional "taking" in provisions of the Frazier-Lemke Act that allowed a bankrupt mortgagor to retain possession of the property for five years, and redeem such property by paying the mortgagee less than the market value of the property. 295 U.S. at 575–576, 601–602, 55 S.Ct. at 856–857, 868–869. The Court held the statute to be void because it effected a "taking of substantive rights in specific property acquired by the Bank prior to" the act's enactment. *Id.* at 590, 55 S.Ct. at 863. Unlike the instant case, the creditor held a valid claim against the debtor secured by the lien on the property.

In conclusion, we can do no better than to echo the response of the Ninth Circuit in *Aguirre:*

> The government's action in *Radford, Security Industrial Bank,* and *Armstrong* destroyed the creditor's security interest in specific property to satisfy the underlying debt, but did not affect the debt itself. In the matter before us, Congress has not impaired the seamen's ability to enforce their maritime *lien* over any viable claim. Instead, Congress eliminated their *claim* for wage penalties. The seamen do not challenge Congress' constitutional power to do so.

801 F.2d at 1191 (emphasis in original) (footnote omitted).

### III.

Finding no error in the district court's dismissal of Castellano's claim, we AFFIRM the decision of the district court.