IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 10, 2007

Charles R. Fulbruge III
Clerk

No. 06-40396

JENGGI KALUOM, Individually, and on behalf of those
similarly situated,

Plaintiff-Appellant,

versus

STOLT OFFSHORE INC; ET AL

Defendants,

STOLT OFFSHORE INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Jenggi Kaluom (Kaluom) appeals from the
order and final judgment entered by the United States District
Court for the Southern District of Texas, Galveston Division, on
February 6, 2006, granting defendant-appellee Stolt Offshore Inc.
(Stolt)'s motion for summary judgment and dismissing Kaluom's suit
with prejudice.  We agree with the district court that the voyage
requirements set out in 46 U.S.C. §§ 10301 and 10501 apply to those

foreign vessels encompassed by penalty wage statutes 46 U.S.C. §§ 10313 and 10504.  Accordingly, because the foreign vessel on which Kaluom worked was not embarked on one of the voyage types described by sections 10301 and 10501, we affirm.

## FACTS AND PROCEEDINGS BELOW

Kaluom is a Malaysian national employed by Malaysian crewing company PPSB.[1]  PPSB assigned Kaluom to work aboard the DLB 801, a foreign vessel documented under foreign laws.  From September 18, 2002 to November 27, 2002, while the DLB 801 was performing subsea pipeline laying operations on the United States' outer continental shelf, Kaluom worked aboard the DLB 801, first as a rigger but later as a pipe facing machine (PFM) operator.  On November 27, 2002, while the DLB 801 was working in the Gulf of Mexico, Kaluom was injured in an accident and had to be airlifted to a hospital in Galveston, Texas.

On October 21, 2004, Kaluom brought suit against defendant-appellee Stolt, a Louisiana corporation with its principal place of business in the Southern District of Texas. Kaluom asserted a penalty wage claim for himself and on behalf of others similarly situated, under 46 U.S.C. §§ 10313 and 10504.[2] Kaluom contended that Stolt "manned, victualed and navigated the

---

[1]PPSB is not a party to this lawsuit.

[2]Kaluom originally filed suit against Stolt and three other corporations that are no longer parties.  Kaluom voluntarily dismissed his claims against those three corporations on May 9, 2005.

2

[DLB 801], and employed the vessel master," and that Stolt failed to pay him the balance of wages owed to him under United States labor laws. Kaluom received wages at a Malaysian pay rate but contends that he should have been paid based on United States labor laws because the Fair Labor Standards Act (FLSA) mandates overtime as well as a minimum hourly wage that is higher than its Malaysian counterpart.

On November 4, 2005, Stolt moved for summary judgment, contending *inter alia* that the penalty wage statutes Kaluom relied on, 46 U.S.C. §§ 10313 and 10504, could not be read in isolation from 46 U.S.C. §§ 10301 and 10501, which articulate specific voyage prerequisites to applying Chapters 103 and 105 of Title 46 of the United States Code. Stolt argued that, in light of 46 U.S.C. §§ 10301 and 10501, Kaluom could not rely on 46 U.S.C. §§ 10313 and 10504's penalty wage provisions because the DLB 801 was on neither a foreign or intercoastal voyage, as articulated by section 10301, nor a coastwise voyage, as described by section 10501.[3] On December 21, 2005, Kaluom responded to Stolt's motion for summary judgment, asserting that penalty wage statutes 46 U.S.C. §§ 10313 and 10504 "appl[y] once a foreign vessel is in a harbor of the

---

[3]Stolt also argued that the FLSA was inapplicable to Kaluom and that the penalty wage statutes could not be applied against Stolt because it was neither the owner nor the master of the DLB 801. Stolt has not re-argued the latter of these two points on appeal and therefore we need not address it. *See Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 270 n.1 (5th Cir. 2007) (failure to brief an issue constitutes waiver). Further, because we find that 46 U.S.C. §§ 10301 and 10501's voyage requirements dispose of this appeal, we decline to venture into a discussion of the FLSA. *See infra* note 6.

3

United States, regardless of the type of voyage that the vessel is engaged in."

On February 6, 2006, the district court granted Stolt's motion for summary judgment and entered a final judgment dismissing with prejudice "[a]ny and all" of Kaluom's claims. The court reasoned:

> "The DLB 801 was engaged in a pipeline installation project in the Gulf of Mexico during the period of Kaluom's assignment. The vessel's originating port was in Fourchon, Louisiana, and there is no evidence that the ship went to any other port, nor is there any evidence that it engaged in a foreign, intercoastal or coastwise voyage. . . . The requirement of a foreign, intercoastal or coastwise voyage is a prerequisite to the application of the penalty wage provisions. *See* 46 U.S.C. § 10301, 10501. If a ship is not engaged in one of the specified voyages, the penalty wage provisions do not protect the seamen on those vessels. A plain reading of the statute compels this result, and to read the statute in any other way would be erroneous."[4]

On March 8, 2006, Kaluom timely filed a notice of appeal.

## STANDARD OF REVIEW

This court reviews both the grant of summary judgment and a district court's statutory construction *de novo*. *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006); *FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 319 (5th Cir.

---

[4]The district court dismissed the notion that Kaluom's removal to Galveston, Texas could constitute a voyage satisfying the requirements of § 10301 and § 10501:

> "The fact that Plaintiff ended up at a hospital in Galveston, Texas does not change this result. First, travel from a port in Louisiana to a port in Texas does not qualify as a coastwise voyage because Louisiana and Texas are adjoining states. *See* 46 U.S.C. § 10501. Second, the DLB 801 did not go to Galveston, Texas, but remained in the Gulf after Plaintiff was transported [by aircraft] back to shore to receive treatment for his injuries."

4

2004).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

## DISCUSSION

Kaluom contends the district court misinterpreted 46 U.S.C. §§ 10313 and 10504 when it concluded that, before those statutory provisions may apply to a foreign vessel, the vessel must be on one of the voyage types specified in 46 U.S.C. §§ 10301 (foreign or intercoastal voyages) and 10501 (coastwise voyage).  Kaluom does not seriously challenge the district court's finding that the DLB 801 was not on a foreign, intercoastal, or coastwise voyage, and he admits that for seamen serving on *American* vessels, the penalty wage statutes *only* apply if the voyage requirements are met. Kaluom nevertheless argues on appeal that there is no voyage prerequisite for seamen serving on *foreign* vessels when those vessels are in United States harbors.

Kaluom brought suit under two penalty wage provisions: 46 U.S.C. §§ 10313 and 10504.  Sections 10313 and 10504 both make clear that they apply "to a seaman on a foreign vessel when in a harbor of the United States."  46 U.S.C. § 10313(i); *id.* § 10504(e).  Kaluom asserts that in his case, because the DLB 801 is

5

a foreign vessel,[5] we should read sections 10313 and 10504 independently of 46 U.S.C. §§ 10301 and 10501's voyage requirements.  He bases this argument in large part on the fact that Chapters 103 and 105 of Title 46 are generally inapplicable to foreign vessels.  Kaluom contends that the penalty wage statutes' plain language, legislative intent, and legislative history support his view of the correct construction of penalty wage statutes 46 U.S.C. §§ 10313 and 10504.  We disagree with Kaluom and decline to read sections 10313 and 10504 in the independent manner he advocates.[6]

---

[5]The vessel to which Kaluom was assigned to work, the DLB 801, is a "derrick/pipelay barge" that is owned by a foreign company and that is registered in a foreign nation.

[6]Because 46 U.S.C. §§ 10301 and 10501's voyage requirements dispose of this appeal, we do not decide other issues raised.  We do not decide whether Kaluom has sued the correct party under 46 U.S.C. §§ 10313 and 10504, which provide that if payment of wages is not properly made, penalty wages may be demanded from a vessel's *master or owner*."  46 U.S.C. §§ 10313(g), 10504(c) (emphasis added); *see also Governor & Co. of the Bank of Scotland v. Sabay*, 211 F.3d 261, 272 (5th Cir. 2000)(stating that 46 U.S.C. § 10313(g) "imposes liability *only* on the vessel's 'master or owner'").  The district court noted: "At the time of the events giving rise to this lawsuit, the DLB 801 was owned by Class 3 Shipping Limited, a Bermuda corporation, and it was documented under the laws of Panama."
We do not decide whether the FLSA applies to Kaluom.  Kaluom asserts that Stolt should have paid him at the FLSA's minimum hourly wage and overtime rates, 29 U.S.C. §§ 206 and 207, rather than at Malaysian pay rates.  29 U.S.C. § 213(a)(12) exempts from the FLSA's minimum wage and maximum hour requirements "any employee employed as a seaman on a vessel other than an American vessel."  29 U.S.C. § 203(p) states that the term "'American vessel' includes any vessel which is documented or numbered under the laws of the United States."  Also excluded from the FLSA's maximum hour requirements is "any employee employed as a seaman."  29 U.S.C. 213(b)(6).  The FLSA does not define the term "seaman."  *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 520, 521 (5th Cir. 1989).  The term's definition under the FLSA is not identical to its definition under the Jones Act.  *Id*. at 520.  Kaluom argues that the DLB 801 is included within the definition of "American vessel" because Stolt, an American company, acted as the vessel's owner *pro hac vice* and was responsible for manning the vessel.  Kaluom also asserts that, in terms of the FLSA's applicability only, he is not a "seaman" and that therefore the exemptions found at 29 U.S.C. § 213(a)(12) and (b)(6) are

6

*I. The statutory text*

"[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 100 S.Ct. 2051, 2056 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id*. We consider the text of 46 U.S.C. §§ 10313 and 10504 in turn.

*A. 46 U.S.C. § 10313*[7]

---

irrelevant. Again, we decline to reach this issue because we find that 46 U.S.C. §§ 10301 and 10501's voyage requirements dispose of this case.

[7]Here, we discuss 46 U.S.C. §§ 10313 and 10301. 46 U.S.C. § 10313, "Wages," states in its entirety:

> "**(a)** A seaman's entitlement to wages and provisions begins when the seaman begins work or when specified in the agreement required by section 10302 of this title for the seaman to begin work or be present on board, whichever is earlier.
> **(b)** Wages are not dependent on the earning of freight by the vessel. When the loss or wreck of the vessel ends the service of a seaman before the end of the period contemplated in the agreement, the seaman is entitled to wages for the period of time actually served. The seaman shall be deemed a destitute seaman under section 11104 of this title. This subsection applies to a fishing or whaling vessel but not a yacht.
> **(c)** When a seaman who has signed an agreement is discharged improperly before the beginning of the voyage or before one month's wages are earned, without the seaman's consent and without the seaman's fault justifying discharge, the seaman is entitled to receive from the master or owner, in addition to wages earned, one month's wages as compensation.
> **(d)** A seaman is not entitled to wages for a period during which the seaman—
> > **(1)** unlawfully failed to work when required, after the time fixed by the agreement for the seaman to begin work; or
> > **(2)** lawfully was imprisoned for an offense, unless a court hearing the case otherwise directs.
> **(e)** After the beginning of the voyage, a seaman is entitled to receive from the master, on demand,

7

one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage.  A demand may not be made before the expiration of 5 days from the beginning of the voyage, not more than once in 5 days, and not more than once in the same port on the same entry.  If a master does not comply with this subsection, the seaman is released from the agreement and is entitled to payment of all wages earned.  Notwithstanding a release signed by a seaman under section 10312 of this title, a court having jurisdiction may set aside, for good cause shown, the release and take action that justice requires.  This subsection does not apply to a fishing or whaling vessel or a yacht.

**(f)** At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier.  When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.

**(g)** When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

**(h)** Subsections (f) and (g) of this section do not apply to a fishing or whaling vessel or a yacht.

**(i)** This section applies to a seaman on a foreign vessel when in a harbor of the United States. The courts are available to the seaman for the enforcement of this section."

46 U.S.C.A. § 10313 (2006).

46 U.S.C. § 10301, "Application," states:

"**(a)** Except as otherwise specifically provided, this chapter applies to a vessel of the United States—

**(1)** on a voyage between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies); or

**(2)** of at least 75 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title on a voyage between a port of the United States on the Atlantic Ocean and a port of the United States on the Pacific Ocean.

**(b)** This chapter does not apply to a vessel on which the seamen are entitled by custom or agreement to share in the profit or result of a voyage.

**(c)** Unless otherwise provided, this chapter does

8

Subsections (e) and (f) of 46 U.S.C. § 10313 set out a seaman's entitlement to "one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage" and to the balance of wages due the seaman at "the end of a voyage." Subsection (g) indicates that failure to adhere to subsection (f)'s provision for wages at a voyage's end leads to penalty wages: "When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed." 46 U.S.C. § 10313(g).

46 U.S.C. § 10301(a) states that Chapter 103 of Title 46 (sections 10301-10321) applies to vessels that are on a foreign voyage—a voyage "between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies)"—or an intercoastal voyage—a voyage "between a port of the United States on the Atlantic Ocean and a port of the United States on the Pacific Ocean." *See id*. § 10301(a)(1)–(2). Subsection 10301(c), however, states that "[u]nless otherwise provided, this chapter [chapter 103] does not apply to a foreign vessel." *Id*. § 10301(c).

Kaluom asserts that 46 U.S.C. § 10313(i) indicates that section 10313's penalty wage provision, but not section 10301's

not apply to a foreign vessel."
46 U.S.C.A. § 10301 (2006).

9

requirement of a foreign or intercoastal voyage, applies to foreign vessels. Subsection 10313(i) states: "This section applies to a seaman on a foreign vessel when in a harbor of the United States." *Id*. § 10313(i).

Kaluom's argument against applying a voyage requirement fails. When construing a statutory provision, we first consider the statute as a whole before turning to the particular provision at issue. *See In re Universal Seismic Associates, Inc.*, 288 F.3d 205, 207 (5th Cir. 2002) (when interpreting statutes, this circuit looks to the plain language of the statute, "'reading it as a whole and mindful of the linguistic choices made by Congress'" (quoting *Whatley v. Resolution Trust Corp.*, 32 F.3d 905, 909 (5th Cir. 1994))). Section 10313 is part of Chapter 103, and 46 U.S.C. § 10301 clearly dictates that Chapter 103 applies only to those vessels that meet the foreign or intercoastal voyage requirement. 46 U.S.C. §10301(a). Section 10313's penalty wage provision is accordingly limited by the foreign or intercoastal voyage requirement described in section 10301—regardless of whether the vessel at issue is American or foreign. Because the DLB 801 was on neither a foreign nor an intercoastal voyage, section 10313's penalty wage provision is inapplicable to Kaluom.

*B. 46 U.S.C. § 10504*[8]

---

[8]In this section, we discuss 46 U.S.C. §§ 10501 and 10504. The complete text of 46 U.S.C. §10504, "Wages," states:
"**(a)** After the beginning of a voyage, a seaman is entitled to receive from the master, on demand,

10

Our analysis of the other penalty wage statute relied on by

one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage. A demand may not be made before the expiration of 5 days from the beginning of the voyage, not more than once in 5 days, and not more than once in the same port on the same entry. If a master does not comply with this subsection, the seaman is released from the agreement required by section 10502 of this title and is entitled to payment of all wages earned. Notwithstanding a release signed by a seaman under section 10312 of this title, a court having jurisdiction may set aside, for good cause shown, the release and take action that justice requires. This subsection does not apply to a fishing or whaling vessel or a yacht.

**(b)** The master shall pay a seaman the balance of wages due the seaman within 2 days after the termination of the agreement required by section 10502 of this title or when the seaman is discharged, whichever is earlier.

**(c)** When payment is not made as provided under subsection (b) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

**(d)** Subsections (b) and (c) of this section do not apply to:

**(1)** a vessel engaged in coastwise commerce.

**(2)** a yacht.

**(3)** a fishing vessel.

**(4)** a whaling vessel.

**(e)** This section applies to a seaman on a foreign vessel when in harbor of the United States. The courts are available to the seaman for the enforcement of this section."

46 U.S.C.A. § 10504 (2006).

46 U.S.C. §10501, "Application," states:

"**(a)** Except for a vessel to which chapter 103 of this title applies, this chapter applies to a vessel of at least 50 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title on a voyage between a port in one State and a port in another State (except an adjoining State).

**(b)** This chapter does not apply to a vessel on which the seamen are entitled by custom or agreement to share in the profit or result of a voyage.

**(c)** Unless otherwise provided, this chapter does not apply to a foreign vessel."

46 U.S.C.A. § 10501 (2006).

11

Kaluom, 46 U.S.C. § 10504, mirrors the foregoing analysis of section 10313. Subsections (a) and (b) of section 10504 set out a seaman's entitlement to wages. Subsection (a) states that "[a]fter the beginning of a voyage, a seaman is entitled to receive from the master, on demand, one-half of the balance of wages earned and unpaid at each port at which the vessel loads or delivers cargo during the voyage." 46 U.S.C. § 10504(a). Subsection (b) states that the "master shall pay a seaman the balance of wages due the seaman within 2 days after the termination of the agreement required by section 10502 of this title or when the seaman is discharged, whichever is earlier." 46 U.S.C. § 10504(c) exacts penalty wages for the failure to adhere to subsection (b): "When payment is not made as provided under subsection (b) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed."[9]

46 U.S.C. § 10501 indicates that Chapter 105 (sections 10501-10509) of Title 46 applies to those vessels not covered by Chapter 103 that are on "a voyage between a port in one State and a port in another State (except an adjoining State)." *Id.* § 10501(a). Subsection 10501(c) states that "[u]nless otherwise provided, this chapter does not apply to a foreign vessel."

Kaluom relies on 46 U.S.C. § 10504(e), which states that

---

[9]Several vessel types are explicitly excluded from taking advantage of 46 U.S.C. § 10504, including "vessel(s) engaged in coastwise commerce." 46 U.S.C. § 10504(d)(1).

section 10504 "applies to a seaman on a foreign vessel when in harbor of the United States."[10]  However, like subsection 10313(i), subsection 10504(e) cannot be read in isolation from the chapter that surrounds it.  Because section 10501 dictates that Chapter 105 applies only to those vessels not covered by Chapter 103 that have embarked on "a voyage between a port in one State and a port in another State (except an adjoining State)," and because the DLB 108 was not on such a voyage, Kaluom may not take advantage of 46 U.S.C. § 10504's penalty wage provision.

We also note that both sections 10313 and 10504 refer to a vessel's "voyage."  *See id*. § 10313(e) (describing the seaman's entitlement to wages "[a]fter the beginning of the voyage"); *id*. § 10504(a) (same); *id*. § 10313(f) (discussing the seaman's entitlement to the balance of his wages "[a]t the end of a voyage").  These references support our determination that 46 U.S.C. §§ 10313 and 10504 should be read in conjunction with 46 U.S.C. §§ 10301 and 10501, as these references employ the term "voyage" in a manner consistent with use of the term elsewhere. *Cf*. *Su v. M/V S. Aster*, 978 F.2d 462, 469 (9th Cir. 1992) (declining to define "voyage" as a "leg of the trip" because "such a definition conflicts with the structure and language of the [Wage] Act").

---

[10]This provision excludes "a" from the phrase "when in a harbor of the United States."

Moreover, we reject Kaluom's assertion that inclusion of the phrase "in a harbor of the United States" in subsections 10313(i) and 10504(e) indicates the lack of a voyage requirement where foreign vessels are at issue. In *Su v. M/V Southern Aster*, 978 F.2d 462 (9th Cir. 1992), the Ninth Circuit concluded that the "in a harbor of the United States" phrase serves as a "jurisdictional provision." *See* 978 F.2d at 468. Thus, the Ninth Circuit relied in part on that phrase in holding that 46 U.S.C. § 10313(f),(g) "should not apply to foreign seafarers discharged from foreign ships in foreign ports." *See id*. at 467, 470. The Ninth Circuit explained, "Had Congress wanted to include all foreign vessels, . . . it could have done so expressly. The language of the Wage Act is clear. It applies only to foreign vessels in United States ports." *Id*. at 471.[11] We conclude that in this case, too, the statutory language is clear: the voyage requirements in sections 10301 and 10501 apply to seamen on both American and foreign vessels who wish to invoke the penalty wage provisions in 46 U.S.C. §§ 10313 and 10504.

*II. Legislative intent*

---

[11]It is unclear whether the DLB 801 fulfills this jurisdictional requirement under 46 U.S.C. §§ 10313(i) and 10504(e) that it be "in a harbor of the United States." The DLB 801 was out in the Gulf of Mexico when Kaluom was airlifted to Galveston. Even assuming that Kaluom was legally discharged from the DLB 801 when he became unable to return to the vessel, there still is no evidence that the DLB 801 was in an American harbor at any time pertinent to Kaluom's suit against Stolt. Nevertheless, we decline to decide the matter because the voyage requirements in sections 10301 and 10501 dispose of this case. We assume *arguendo* only that the "in a harbor of the United States" requirement was met.

14

"[I]n rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." *Griffin v. Oceanic Contractors, Inc.*, 102 S.Ct. 3245, 3250 (1982). This, however, is not such a rare case.

First, if we were to construe subsections 10313(i) and 10504(e) in the independent manner Kaluom advocates, refraining from applying 46 U.S.C. §§ 10301 and 10501's voyage requirements to foreign vessels, at least one of the subsections referring to foreign vessels would be redundant. This is so because if the voyage requirements are read separately from subsections 10313(i) and 10504(e), 46 U.S.C. § 10313(i) and 46 U.S.C. § 10504(e) would be without a meaningful difference. If Congress had intended these subsections to be free of Chapter 103's and Chapter 105's voyage requirements, then Congress would likely have indicated the disparate treatment of foreign vessels by creating a single, separate section dealing with penalty wages for seamen on foreign vessels.

Second, there is strong evidence that Congress *did not* intend for foreign vessels to be treated differently under the penalty wage statutes. The United States Supreme Court has stated that the purpose of amendments made in 1915 to the penalty wage provisions—resulting in the application of penalty wages to seamen on foreign vessels—was to equalize the rights of foreign and United

15

States seamen.[12] *See Stratheam S.S. Co. v. Dillon*, 40 S.Ct. 350, 352 (1920) (stating that, at least in regards to section 4530, the Seaman's Act of March 4, 1915, 38 Stat. 1164, "manifests the purpose of Congress to place American and foreign seamen on an equality of right"). Construing 46 U.S.C. §§ 10313 and 10504 in the manner Kaluom advocates would place seamen on foreign vessels in a better position than their colleagues on American vessels: seamen on foreign vessels could claim penalty wages in situations where seamen on American vessels could not. Thus, legislative intent supports applying 46 U.S.C. §§ 10301 and 10501's voyage requirements to foreign vessels that otherwise fall under 46 U.S.C. §§ 10313's or 10504's umbrella.

*III. Legislative History*

The penalty wage statutes' legislative history is likewise conclusive. As explained below, from 1878 to 1983, there was just one section setting out both the voyage requirements and the penalty wage provisions. This historical structure indicates that 46 U.S.C. §§ 10301 and 10501's voyage requirements should be read together with the penalty wage provisions—even when dealing with foreign vessels.

"Seamen's wages were the subject of legislation enacted by the first Congress, giving seamen the right to collect their wages 'as soon as the voyage is ended.'" *Governor & Co. of the Bank of*

---

[12]The penalty wage statutes first came into existence in 1872, but have applied to foreign vessels only since the amendments made in 1915.

16

*Scotland v. Sabay*, 211 F.3d 261, 266 (5th Cir. 2000) (quoting Act of July 20, 1790, ch. 29, § 6, 1 Stat. 131, 133–34).  "Congress established penalty wages approximately 80 years later, in 1872." *Id.* (citing Shipping Commissioners Act of 1872, ch. 322, § 35, 17 Stat. 262, 269).  The Shipping Commissioners Act of 1872 dictated that "every master or owner who neglects or refuses to make payment in manner aforesaid without sufficient cause shall pay to the seaman a sum not exceeding the amount of two days' pay for each of the days, not exceeding ten days, during which payment is delayed . . . ."  § 35, 17 Stat. at 269.  The section of the 1872 Act setting out this penalty wage provision begins with describing the seaman's entitlement to wages, stating in pertinent part, "[T]he master or owner of any ship *making voyages as hereinbefore described in section twelve* of this act . . . shall pay to every seaman his wages within two days after the termination of the agreement, or at the time such seaman is discharged, whichever first happens . . . ."  *Id.* (emphasis added).  Section twelve of the 1872 Act refers to foreign and intercoastal voyages.[13]  *See* § 12, 17 Stat. at 264–65.

"The 1790 and 1872 statutes were the basis for § 4529 of the

---

[13]Section 12 specifically excludes vessels on coastwise voyages.  In 1874, Congress added a provision that made clear that penalty wages would not be available to those seamen on "vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions."  Act of June 9, 1874, ch. 260, 18 Stat. 64–65; *Dunham v. M/V Marine Chemist*, 812 F.2d 212, 213 n.1 (5th Cir. 1987).  *See also infra* note 14.

17

Revised Statutes, which contained language substantially identical to that in the 1872 statute." *Sabay*, 211 F.3d at 267 (citing Rev. Stat. § 4529 (2d ed. 1878)). Section 4529 of the 1878 Revised Statutes incorporated both the 1872 Act's reference to foreign and intercoastal voyages and the 1872 Act's provision for penalty wages. Thus, from 1878, the provision for penalty wages and the description of voyage requirements were located in the *same statutory section*.

Twenty years later, in 1898, Congress amended the penalty wage statute, "eliminat[ing] the ten-day limitation for penalty wages, but decreas[ing] the penalty from two to one day's pay for each day of delay." *Sabay*, 211 F.3d at 267 (citing Act of Dec. 21, 1898, ch. 28, § 4, 30 Stat. 755, 756). The 1898 amendment also added to section 4529's reach, dictating payment to seamen by the "master or owner of any vessel making *coasting voyages*."[14] § 4, 30 Stat. at

---

[14]The addition of vessels making "coasting voyages" to the penalty wage provision's purview in 1898 was not meant to affect the exception for "coastwise voyages" in the 1872 Act. Before the penalty wage statute's recodification in 1983, it "provided for a right to collect penalty wages in coasting voyages, but . . . specifically excluded seamen on coastwise voyages from collecting penalty wages." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1288 (11th Cir. 2000) (discussing the predecessor statute to 46 U.S.C. § 10504, 46 U.S.C. §§ 596, 544). "The current statute . . . does not distinguish between coasting and coastwise voyages. Instead, the current statute, which does not mention coasting voyages, establishes three designations for voyages: foreign, intercoastal, and coastwise." *Id*. at 1288–89. The Eleventh Circuit has stated that "the exclusion of 'a vessel engaged in coastwise commerce' from the right to recover penalty wages effectively eliminates the benefit of the penalty wage provision for coastwise voyages." *Id*. at 1289 (citing this circuit's decision in *Dunham v. M/V Marine Chemist*, 812 F.2d 212, 215 (5th Cir. 1987), and asserting that that decision held that "a claim for penalty wages, pursuant to section 10504, no longer applies to coastwise voyages"). However, the Eleventh Circuit also noted that, although perhaps rare, "there may be instances in which a vessel is on a coastwise voyage, but not engaged in commerce, and accordingly, not engaged in

18

756 (emphasis added). Section 4529 continued to refer to foreign and intercoastal voyages. *Id.* As with the 1878 version of section 4529, the 1898 amended version included voyage requirements and provided for penalty wages within a single statutory section.

In 1915, section 4529 was again amended, and penalty wages were "doubled to the present two days' pay for each delay-day." *Id.* (citing Seaman's Act of 1915, ch. 153, § 3, 38 Stat. 1164, 1164–65, codified at 46 U.S.C. § 596). Like the previous versions of section 4529, the 1915 version, in a single section, provided for penalty wages and set out the types of voyages that would bring a vessel under its purview. *See* § 3, 38 Stat. at 1164–65. Also in the 1915 Act amending section 4529, it was provided that section 4530, which refers explicitly to section 4529, "shall apply to seamen on foreign vessels while in harbors of the United States . . . ." § 4, 38 Stat. at 1165 (stating that "when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall then be due him, *as provided in* section forty-five hundred and twenty-nine of the Revised Statutes" (emphasis added)). As noted, section 4529 expressly applied only to seamen on the specified voyages. The 1915 amendment to section 4530, with its "as provided in section" 4529 language, appears to be the first time that seamen on foreign vessels were included within the penalty wage provisions' umbrella. The inclusion of seamen on

coastwise commerce." *Id.* at 1289 n.9.

19

foreign vessels is also seen in the 1920 amendments to section 4530. *See* Merchant Marine Act, ch. 250, § 31, 41 Stat. 988, 1006 (1920).

The penalty wage provision in section 4529 and the related section 4530 found their way into the United States Code in sections 596 and 597 of Title 46.[15] They remained in sections 596 and 597 until amendments were made in 1983. In *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d 568 (2d Cir. 1960), the Second Circuit read 46 U.S.C. § 597's inclusion of seamen on foreign vessels in conjunction with the penalty wage provision in 46 U.S.C. § 596. 280 F.2d at 572. The Second Circuit stated:

> "Section 597 represents an amendment of Revised Statutes § 4530, by § 4 of the Seaman's Act of 1915, 38 Stat. 1165, as further amended by § 31 of the Act of June 5, 1920, 41 Stat. 1006. Strathearn SS. Co. v. Dillon, 1920, 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607 held that § 4 of the Seaman's Act was applicable to foreign seamen despite contrary stipulations in the shipping articles and sustained the constitutionality of the statute as so applied. Although it might have been argued that the foreign vessel proviso referred only to the part payment at each port directed by § 597 and not also to the incorporation by reference of the mandate of § 596 as to wages and penalty wages, the contrary was determined in The Sonderborg, 4 Cir., 47 F.2d 723, 726–727, certiorari denied Akties Dampskibsselskabet Donneborg v. Mikkelsen, 1931, 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527 . . . ."

*Id.* Like the Second Circuit in *Monteiro*, this court has previously

---

[15]Section 596 continues to describe the type of voyages covered, and § 597 continues to provide that "when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall then be due him, *as provided in section 596 of this title*" and that "this section shall apply to seamen on foreign vessels when in harbors of the united States . . ." (emphasis added). This then is the *only* wage or penalty wage provision for seamen on foreign vessels.

been careful to read the statutory provision for seamen's penalty wages together with the provisions surrounding it. *See The Cubadist*, 256 F. 203, 205 (5th Cir. 1919) (stating, "Section 4529 and section 4530 should be construed together.").

The language of section 4529's penalty wage provision "was amended for the last time in 1983, when the maritime laws were recodified." *Sabay*, 211 F.3d 261, 267 (5th Cir. 2000) (citing Pub. L. No. 98-89, 97 Stat. 500, 566 (1983)). The 1983 amendments split up the penalty wage provisions from the delineation of the voyage types that could trigger penalty wages, resulting in the current layout of Chapters 103 and 105 at issue in this appeal. *See* 97 Stat. at 561, 566–67, 570–71 (1983). Although the 1983 amendments significantly reorganized the penalty wage provisions, this reorganization was not intended to effect any substantive changes. *Sabay*, 211 F.3d at 269–70. Thus, when Congress realized that in the 1983 reorganization it had inadvertently omitted an exception for vessels engaged in "coastwise commerce," it amended 46 U.S.C. § 10504 to include the exception and made the amendment retroactive to the 1983 changes. *See Dunham v. M/V Marine Chemist*, 812 F.2d 212, 212–13 (5th Cir. 1987) (per curiam) (omission corrected in Pub. L. No. 99-36, 99 Stat. 67, 67 (1985)); *see also Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1290 (11th Cir. 2000) ("After the reorganization, Congress noticed that the new penalty wage provisions did not include the coastwise exception found in the

21

prior law.  To rectify this error, Congress amended 46 U.S.C. § 10504(d)(1) to exclude vessels engaged in coastwise commerce . . . .") (footnote omitted)).

Thus, the penalty wage statutes' legislative history also unequivocally supports reading 46 U.S.C. §§ 10313 and 10504 in conjunction with 46 U.S.C. §§ 10301 and 10501's voyage requirements.  For over one hundred years, voyage requirements and penalty wage provisions resided in the same statutory section, and the change in statutory form caused by the 1983 rearranging amendments was not meant to create any substantive change.  Certainly it was not thereby intended, for the first time in the nation's history, to grant seamen on foreign vessels an entitlement to penalty wages on voyages as to which seamen on American vessels would have no such entitlement.

## CONCLUSION

Because we find that the voyage requirements outlined in 46 U.S.C. §§ 10301 and 10501 apply to seamen on foreign vessels who wish to invoke the penalty wage provisions in sections 10313 and 10504, we hold that the district court correctly granted summary judgment in favor of Stolt.  The vessel on which Kaluom was working, the DLB 801, was not on any of the types of voyages that would bring the vessel under the penalty wage statutes' umbrella.

The judgment of the district court is

AFFIRMED.

22